**CENTRAL SOYA CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Court No. 88–07–00575.

United States Court of
International Trade.

March 20, 1991.

Soller, Shayne & Horn, Carl R. Soller and Margaret H. Sachter, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Al J. Daniel, Jr. (Chi Choy, U.S. Customs Service, New York City, of counsel), for defendant.

Thompson, Hine and Flory, Lewe B. Martin, Peter A. Greene and Frank P. Cihlar, Washington, D.C., for amicus curiae B.F. Goodrich Co.

Paul, Weiss, Rifkind, Wharton & Garrison, Robert E. Montgomery, Jr., George Kleinfeld and Richard S. Taylor, Washington, D.C., for amicus curiae Congressman Bill Frenzel.

Neville, Peterson & Williams, John M. Peterson, New York City, and Peter J. Allen, Hoboken, N.J., for amicus curiae Uniroyal Chemical Co.

ON CROSS MOTIONS FOR
SUMMARY JUDGMENT

RE, Chief Judge:

The question presented in this case pertains to the plaintiff-importer's entitlement to a drawback, or refund, pursuant to 19 U.S.C. § 1313(j)(2), on customs duties paid on imported merchandise when, within three years of the importation, substitute fungible goods are exported in the same condition as the imported goods. The drawback, or refund, authorized pursuant to this statute and the customs regulations promulgated thereunder, is referred to in customs law as a "substitution same condition drawback."

Plaintiff, Central Soya Company, Inc., the importer of certain crude degummed soybean oil, entered into a contract with the Bunge Corporation for an amount of similar crude oil. Since the imported crude oil had already undergone processing, plaintiff performed its contract with Bunge by sending domestic crude degummed soybean oil. The domestic crude oil was delivered to Bunge, and, pursuant to a contract between Bunge and a foreign corporation, was then exported. Plaintiff then sought substitution same condition drawback for the exported crude oil. Plaintiff's request was denied by Customs on the ground that plaintiff was not the exporter of the crude oil.

In this action, the plaintiff contends that the Customs Service acted illegally in denying drawback. The defendant contends that 19 U.S.C. § 1313(j)(2), read in the light of its legislative history, requires that the drawback claimant must be the exporter of the substituted merchandise.

The question presented is whether the Customs Service acted illegally in denying the plaintiff substitution same condition drawback, pursuant to 19 U.S.C. § 1313(j)(2), on the ground that the plaintiff was not the exporter of the substituted merchandise.

Since, in enacting 19 U.S.C. § 1313(j)(2), Congress did not intend to require that the claimant of substitution same condition drawback be the exporter of the substituted merchandise, it is the conclusion of the court that Customs acted illegally in denying the plaintiff the requested drawback. Since it is not disputed that the plaintiff has satisfied the other requirements for drawback, the plaintiff is entitled to drawback. Accordingly, the plaintiff's motion for summary judgment is granted, and the defendant's cross-motion is denied.

## BACKGROUND

### 1. Factual Background

Both parties submitted statements of material facts as to which there is no genuine dispute. The plaintiff, Central Soya Company, Inc., imported 5,988,540 lbs. of crude degummed soybean oil, between May 11 and May 29, 1985. Upon entry, the crude oil was processed by the plaintiff to produce refined soybean oil.

On June 25, 1985, the plaintiff entered into a contract with the Bunge Corporation, agreeing to supply Bunge with 2,817,621 lbs. of crude degummed soybean oil. Since plaintiff had already processed the imported crude oil, it performed its contract with Bunge by delivering to Bunge 2,817,621 lbs. of domestic crude degummed soybean oil. Pursuant to a contract between it and a foreign corporation, Bunge then exported the domestic crude oil.

On June 25, 1985, pursuant to 19 U.S.C. § 1313(j)(2), the plaintiff filed its request with the Customs Service for substitution same condition drawback of duties, for 2,817,621 lbs. of crude degummed soybean oil. As part of its claim for drawback, the plaintiff submitted a statement by Bunge, in favor of the plaintiff, in which Bunge disclaimed any right to drawback for the exported crude oil.

In 21 Cust.Bull. 365, C.S.D. 87–6 (1987), the Customs Service denied the plaintiff's claim for drawback. The Customs Service first determined that, for purposes of 19 U.S.C. § 1313(j)(2), the exported domestic crude oil was "fungible" with the imported crude oil. *See id.* at 366.

The Customs Service then considered whether the drawback claimant must be in possession of the substituted merchandise, and quoted language from the legislative history of 19 U.S.C. § 1313(j)(2). Specifically, the Customs Service quoted language from the House of Representatives Report No. 98–1015, which stated that:

"Drawback is provided *if the same person requesting drawback*, subsequent to importation and within three years of importation of the merchandise, *exports from the United States* or destroys under Customs supervision fungible merchandise (whether imported or domestic) which is commercially identical to the merchandise imported."

*Id.* at 366–67 (quoting H.R.Rep. No. 1015, 98th Cong., 2d Sess. 64, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4910, 4960, 5023) (emphasis in original). The Customs Service reasoned that "[t]o qualify for drawback under this provision of law, the exporter must be in possession of the substituted merchandise at the time of exportation and the exporter is also the legal entity that must satisfy the other possession requirement for the imported duty-paid merchandise designated for payment of drawback." *Id.* at 366.

The plaintiff then brought this action, contending that the Customs Service exceeded its statutory authority, and had illegally denied the plaintiff substitution same condition drawback. The defendant contends that Customs did not exceed its authority, since 19 U.S.C. § 1313(j)(2), read in the light of its legislative history, requires that the drawback claimant must be the exporter of the substituted merchandise. Plaintiff moved for summary judgment, and defendant cross-moved for summary judgment.

2. Statutory History of Substitution Same Condition Drawback

A. *Drawback of Duties*

The first customs laws enacted by the United States Congress provided for an importer to obtain a drawback of duties. Section 3 of the Act of July 4, 1789, provided that:

all the duties paid, or secured to be paid upon any of the goods, wares and merchandises as aforesaid, except on distilled spirits, other than brandy and geneva, shall be returned or discharged upon such of the said goods, wares, or merchandises, as shall within twelve months after payment made, or security given, be exported to any country without the limits of the United States, as settled by the late treaty of peace; except one per centum on the amount of the said duties, in consideration of the expense which shall have accrued by the entry and safekeeping thereof.

Act of July 4, 1789, ch. 2, § 3, 1 Stat. 24, 26–27.

In 1874, when the statutes enacted by Congress were codified into the Revised Statutes of the United States, an importer's entitlement to a drawback was provided for in section 3015. The statute, however, limited drawback to duties paid on merchandise that is imported, and subsequently "exported to any foreign port other than the dominions of any foreign state immediately adjoining to the United States...."

A further limitation on an importer's entitlement to drawback was contained in the Tariff Act of 1930. Section 313 of the Act provided for drawback for duties paid on imported merchandise only if the imported merchandise was used in the manufacture of exported merchandise. In pertinent part, section 313(a) provided that "[u]pon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties...." Tariff Act of 1930, ch. 497, § 313(a), 46 Stat. 590, 693. Section 313(a) was codified at 19 U.S.C. § 1313(a).

In 1980, Congress expanded the entitlement to drawback by amending the drawback statute to provide for "same condition drawback," or drawback paid on imported merchandise that is subsequently exported without being manufactured. *See* Act of Dec. 28, 1980, Pub.L. No. 96–609, § 201(a), 94 Stat. 3555, 3560. Section 201(a), which was codified at 19 U.S.C. § 1313(j), provided that:

(j) SAME CONDITION DRAWBACK —(1) If imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law because of its importation—

(A) is, before the close of the three-year period beginning on the date of importation—

(i) exported in the same condition as when imported, or

(ii) destroyed under Customs supervision; and

(B) is not used within the United States before such exportation or destruction;

then upon such exportation or destruction 99 per centum of the amount of each such duty, tax, and fee so paid shall be refunded as drawback.

(2) The performing of incidental operations (including, but not limited to, testing, cleaning, repacking, and inspecting) on the imported merchandise itself, not amounting to manufacture or production for drawback purposes under the preceding provisions of this section, shall not be treated as a use of that merchandise for purposes of applying paragraph (1)(B).

B. *Substitution Same Condition Drawback*

·On May 26, 1983, Congressman Bill Frenzel introduced House of Representatives Bill 3157 (H.R. 3157), the first version of the substitution same condition drawback law. H.R. 3157, which was to be codified at 19 U.S.C. § 1313(j)(2), allowed for drawback, with certain limitations, on "merchandise of the same kind and quality as imported merchandise upon which was paid any duty, tax, or fee because of such im-

portation...." H.R. 3157, 98th Cong., 1st Sess. (1983). H.R. 3157, which was not enacted into law, did not provide any limitations on who would be eligible or entitled to claim drawback.

On November 4, 1983, Congressman Frenzel introduced House of Representatives Bill 4316 (H.R. 4316), which was described by Congressman Frenzel as "a revised version of H.R. 3157." This "revised version" required that the imported merchandise must have "been imported by a person prior to the subsequent exportation by the same person of such commercially identical merchandise...." H.R. 4316, 98th Cong., 1st Sess. (1983).

In his introductory remarks, Congressman Frenzel specifically stated that H.R. 4316 requires that "import and export must be made by the same person." In addition, in its report on H.R. 4316, the Subcommittee on Trade of the Committee on Ways and Means of the House of Representatives commented that:

> Drawback is provided if the same person requesting drawback, subsequent to importation and within three years of importation of the merchandise, exports from the United States or destroys under Customs supervision fungible merchandise (whether imported or domestic) which is commercially identical to the merchandise imported.

Subcomm. on Trade of the Comm. on Ways and Means of the House of Reps., 98th Cong., 2d Sess., Report on Miscellaneous Tariff and Customs Bills 67 (Comm.Print 1984).

H.R. 4316, however, was never passed by the House. Instead, on September 18, 1984, the House passed House of Representatives Bill 6064 (H.R. 6064). Section 201 of H.R. 6064, which provided for substitution same condition drawback, did not require that the drawback claimant be the exporter of the substituted merchandise. Rather, section 201 of H.R. 6064 stated that, "before [the] exportation or destruction" of the imported merchandise, the merchandise must be "in the possession of the party claiming drawback under this

paragraph...." H.R. 6064, 98th Cong., 2d Sess. (1984).

The Senate did not pass H.R. 6064. On September 20, 1984, the Senate passed House of Representatives Bill 3398 (H.R. 3398), which contained a provision for substitution same condition drawback in section 208. As passed by the Senate, section 208 of H.R. 3398 required that the drawback claimant be the exporter of the substituted merchandise. On October 3, 1984, the House voted to amend H.R. 3398, so that it required only that the drawback claimant have been "in possession" of the substituted merchandise.

Subsequently, a Conference Committee of the House and Senate recommended the enactment of H.R. 3398. As recommended, H.R. 3398 contained section 202, which simply provided that the drawback claimant must have been "in possession" of the substituted merchandise. In its report, however, the Conference Committee followed the language used in House of Representatives report 98–1015, and stated that section 202:

> [a]mends section 313(j) of the Tariff Act of 1930 to provide drawback if the same person requesting drawback, subsequent to important [sic] and within three years of importation of the merchandise, exports from the United States or destroys under Customs supervision fungible merchandise (whether imported or domestic) which is commercially identical to the merchandise imported.

H.R.Conf.Rep. No. 1156, 98th Cong., 2d Sess. 124–25 (1984) (Conference Report), 1984 U.S.Code Cong. & Admin.News pp. 5241–42. The language is identical to the language used by the House Subcommittee on Trade in its report on the earlier bill H.R. 4316. H.R. 4316 expressly provided that only the exporter of the substituted merchandise was entitled to substitution same condition drawback.

After its recommendation by the Conference Committee, H.R. 3398 was enacted into law as the Trade and Tariff Act of 1984, Pub.L. No. 98–573, 98 Stat. 2948 (1984). Section 202 of the Act, the statutory provision governing substitution same

condition drawback, was codified at section 1313(j)(2) of title 19. Section 1313(j)(2) provides that:

(2) If there is, with respect to *imported merchandise on which was paid any duty,* tax, or fee imposed under Federal law because of its importation, *any other merchandise* (whether imported or domestic) that—

(A) *is fungible with such imported merchandise;*

(B) is, before the close of the three-year period beginning on the date of importation of the imported merchandise, either exported or destroyed under Customs supervision;

(C) *before such exportation or destruction—*

(i) is not used within the United States, and

(ii) *is in the possession of the party claiming drawback* under this paragraph; and

(D) is in the same condition at the time of exportation or destruction as was the imported merchandise at the time of its importation; then *upon the exportation or destruction of such other merchandise the amount of each such duty, tax, and fee paid regarding the imported merchandise shall be refunded as drawback,* but in no case may the total drawback on the imported merchandise, whether available under this paragraph or any other provision of law or any combination thereof, exceed 99 percent of that duty, tax, or fee.

19 U.S.C. § 1313(j)(2) (1988) (emphasis added).

## DISCUSSION

■ In the process of administering a statute, it is clear that an administrative agency must interpret the statute, and within the statutory guidelines set by Congress, may set policy and establish rules. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Hence, in cases which deal with the interpretation of statutes administered by an administrative agency, if the court determines that "Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute. . . ." *Id.* Rather, the agency's interpretation is entitled to deference, and the court must consider whether the interpretation of the administrative agency "is based on a permissible construction of the statute." *Id.*

Despite its statements according substantial deference to the actions of an administrative agency, the Supreme Court in *Chevron* recognized that on judicial review a court must first consider "whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. at 2781. The Court expressly noted that "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. The *Chevron* Court further stated that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843 n. 9, 104 S.Ct. at 2781 n. 9.

As has been often noted, a reviewing court begins "with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

In support of its motion for summary judgment, the plaintiff contends that section 1313(j)(2) "sets one requirement as to the party claiming substitution same condition drawback, namely that the claimant must have had possession of the fungible substituted merchandise." The plaintiff submits that section 1313(j)(2) clearly does not require that the claimant have possession of the substituted merchandise at the time of exportation, as required by the Customs Service.

On its cross-motion for summary judgment, the defendant contends that "the Customs Service's regulations and rul-

ings—which require that the person claiming substitution same condition drawback be in possession of and export the substituted merchandise—are reasonable, consistent with the statute and its legislative history, and must be followed in this case."

■ It cannot be disputed that, as noted by the plaintiff, section 1313(j)(2) does not expressly require that the drawback claimant be in possession of the substituted merchandise *at the time of exportation.* The statute simply requires that "before [the] exportation or destruction," the exported merchandise be "in the possession of the party claiming drawback." Hence, the language of section 1313(j)(2) itself indicates that Congress did not intend to require that the claimant of substitution same condition drawback must be in possession of the substituted merchandise at the time of exportation, or must be the exporter of the substituted merchandise.

The defendant, however, contends that the legislative history of section 1313(j)(2) "authorizes the payment of substitution same condition drawback only to the exporter of the substituted merchandise who also possessed the imported duty-paid goods upon which the drawback claim is based." In support of its contention, the defendant cites language from H.R.Rep. 98–1015, the House Report to the Trade and Tariff Act of 1984, which stated that "[d]rawback is provided if the same person requesting drawback ... exports from the United States ... fungible merchandise...." H.R.Rep. No. 1015, 98th Cong., 2d Sess. 64, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4960, 5023. This language was adopted by the Conference Committee in its statement recommending the enactment of H.R. 3398.

The statement from the Conference Report appears to indicate that, in enacting section 1313(j)(2), Congress intended to require that the claimant of substitution same condition drawback be the exporter of the substituted merchandise. The plaintiff, however, argues that this statement from the Conference Report does not accurately reflect the intent of Congress in enacting the substitution same condition

drawback law. The plaintiff contends that, prior to the enactment, Congress rejected other versions of the law which would have provided that substitution same condition drawback could only be claimed by the exporter of the substituted merchandise.

Specifically, the plaintiff notes that H.R. 4316 stated that drawback could be made on merchandise "which has been imported by a person prior to the subsequent exportation by the same person of ... commercially identical merchandise...." In H.R. 6064, a successor to H.R. 4316, Congress amended the substitution same condition drawback provision to require only that before the exportation of the substituted merchandise, the substituted merchandise must be "in the possession of the party claiming drawback...."

In H.R. 3398, a successor to H.R. 6064, the Senate passed a substitution same condition drawback statute providing that the drawback claimant must be the exporter of the substituted merchandise. Nevertheless, at the Conference Committee, a Joint Committee of the House and Senate recommended a version of H.R. 3398 which contained a substitution same condition drawback law that required only that the substituted merchandise must have been "in the possession of the party claiming drawback...." H.R. 3398 was enacted into law, as the Trade and Tariff Act of 1984. The statement contained in the Committee Report and cited by the defendant, however, is identical to the language contained in the Report of the House Subcommittee on Trade in its report on H.R. 4316, the prior House bill which expressly required that the imported merchandise must have "been imported by a person prior to subsequent exportation by the same person of such commercially identical merchandise...."

Referring to the language contained in the Committee Report, the plaintiff stresses that "[t]he language on which Customs relies for its administration of this portion of the drawback law was not drafted for the text that Customs claims it interprets[.]"

In support of its position, the plaintiff refers to a letter of December 2, 1987, from Congressman Frenzel to a Deputy Commissioner of Customs, concerning Customs' administration of the substitution same condition drawback law. In the letter, which was written in response to the Customs Service ruling in this case, Congressman Frenzel stated that "my intention as the author of the law was not to limit receipt of substitution same condition drawback duties to the actual exporter of the product." Noting Customs' reliance on the quoted language from the Committee Report in its decision, Congressman Frenzel stated that Customs:

> based [its] ruling on a statement in the committee report which does not accurately interpret the law, in my opinion. As the author, I should have caught the error, but, since this bill was one of many continued [sic] in a package, I did rely on the majority staff for committee report language.

Regardless of whether the Conference Committee erred in its inclusion of the language in the Committee Report, it is evident from a review of the legislative history that, on more than one occasion, Congress rejected bills which expressly required that the person claiming substitution same condition drawback be the exporter of the substituted merchandise. Surely, it cannot be said that the legislative history is a model of clarity that resolves the question of statutory interpretation presented. The legislative history reveals several views that were suggested and considered as to the requirements that would qualify a party for substitution same condition drawback. What is clear is that Congress did not enact into law the requirement now submitted by the defendant, that in order to qualify for drawback under section 1313(j)(2), the claimant must also be the exporter of the substituted merchandise. It is beyond question that the pertinent statutory provision merely states that "before the close of the three-year period beginning on the date of importation of the imported merchandise, either exported or destroyed under Customs supervision[,]" the substituted merchandise must be "in

the possession of the party claiming drawback under this paragraph...." 19 U.S.C. § 1313(j)(2) (1988).

The Supreme Court has noted that " '[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.' " *INS v. Cardoza–Fonseca*, 480 U.S. 421, 442–43, 107 S.Ct. 1207, 1219, 94 L.Ed.2d 434 (1987) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 392–93, 100 S.Ct. 1723, 1741–42, 64 L.Ed.2d 354 (1980) (Stewart, J., dissenting)). Hence, in this case, the court cannot agree with the position urged by the defendant, and concludes that the legislative history indicates that Congress did not intend to require that the claimant of substitution same condition drawback must be the exporter of the substituted merchandise.

Nevertheless, in support of its argument, the defendant notes that Congress expressly granted the Secretary of the Treasury authority for "the designation of the person to whom any refund or payment of drawback shall be made." 19 U.S.C. § 1313(*l*) (1988). In its reply brief, the defendant submits that in 19 U.S.C. § 1313(*l*), Congress granted the Secretary of the Treasury "an extraordinarily broad mandate, not just to issue regulations consistent with the terms of the act, a phrase which Congress sometimes employs, but to 'prescribe' substantive rules regarding specific subjects, which include 'the designation of the person to whom any refund or payment of drawback shall be made.' "

In support of its position, the defendant cites *Haig v. Agee*, 453 U.S. 280, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981), and *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Both these cases may be distinguished, however, and, hence, we reject the defendant's contention that, in this case, the Customs Service has "an extraordinarily broad mandate" to interpret section 1313(j)(2).

In *Haig,* a case which dealt with the delegated authority of the Secretary of State to revoke a passport for reasons of national security and foreign policy, the Court stated that "[i]t is beyond dispute that the Secretary has the power to deny a passport for reasons not specified in the statutes." 453 U.S. at 290, 101 S.Ct. at 2773. In *Haig,* however, the Court specifically noted the special area in which Congress had delegated power to an administrative agency in that case. *See id.* at 291–92, 101 S.Ct. at 2773–74. The Court stated that when Congress delegates power to an administrative agency in the area of foreign policy and national security, it " 'must of necessity paint with a brush broader than that it customarily wields in domestic areas.' " *Id.* at 292, 101 S.Ct. at 2774 (emphasis omitted) (quoting *Zemel v. Rusk,* 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965)).

The *Mourning* case, which was also cited by the defendant, pertained to the delegated authority of the Federal Reserve Board to combat unfair consumer credit transactions. In *Mourning,* the Supreme Court determined that, under the pertinent statute, Congress had granted broad power to the agency. *See* 411 U.S. at 365–66, 93 S.Ct. at 1658–59. *Mourning* dealt with remedial legislation in which the agency needed to adapt to changing circumstances in order to fulfill its role under the statute. As noted by the Court in *Mourning,* "[w]hatever legislation was passed had to deal not only with the myriad forms in which credit transactions then occurred, but also with those which would be devised in the future." *Id.* at 365, 93 S.Ct. at 1658.

It is clear that neither the statutory language nor its legislative history supports Customs' requirement that the claimant of substitution same condition drawback must be the exporter of the substituted merchandise. Hence, Customs has acted illegally in requiring that the claimant of substitution same condition drawback be the exporter of the substituted merchandise, and has exceeded its statutory authority in denying plaintiff drawback in this case.

Furthermore, not only is Customs' administration of substitution same condition drawback in violation of section 1313(j)(2) and in excess of Customs' statutory authority, but it is doubtful whether the Customs regulations themselves on substitution same condition drawback support Customs' actions in this case. For example, Customs Regulation 191.141(h), which is contained in subpart N, provides that:

If legal person X possesses imported merchandise (the designated merchandise) during some time interval in period A (defined below) and also possesses other merchandise fungible with it (the substituted merchandise) during the same or different time interval in period A, then 99 percent of the duty paid on the designated merchandise will be refunded as drawback, provided that:

(1) The designated merchandise was in the same condition as imported either at the time of substitution, the time X used it in manufacturing, or at the time X transferred it to another person, whichever occurs first;

(2) The substituted merchandise is in the same condition when exported or destroyed under Customs supervision as was the designated merchandise when imported;

(3) X does not issue a certificate of delivery covering the designated merchandise nor a certificate of manufacture and delivery covering articles manufactured or produced therefrom; and

(4) X maintains records to establish requirements, (1), (2), and (3) of this section and also complies with all relevant requirements of § 191.141(a) through (g) of this chapter.

Period A (referred to above) begins when X receives the merchandise and ends three years after the importation of said merchandise.

19 C.F.R. § 191.141(h) (1990).

It is clear that Customs Regulation 191.-141(h) does not expressly require that the drawback claimant must be the exporter of the substituted merchandise. Instead, the regulation only requires that a "legal person X" possesses both the imported mer-

chandise and the substituted merchandise "during the same or different time interval in period A." According to the regulation, "[p]eriod A ... begins when X receives the merchandise and ends three years after the importation of said merchandise."

In addition, Customs' interpretation of the regulation is disputed by the affidavit of George C. Steuart, which was submitted by the plaintiff. In his affidavit, Mr. Steuart, the former Chief of the Drawback and Bonds Branch of the Customs Service, stated that he was responsible for drafting Customs Regulation 191.141(h). Mr. Steuart stated that the regulations for substitution same condition drawback were drafted "to ensure that both lots of merchandise would come into the possession of the same entity at some time between the importation of the designated merchandise and the export of the substituted merchandise." He added that " '[l]egal person X' was not intended to refer to the drawback claimant, and the regulations were not intended to add the requirement that a claimant of substitution same condition drawback possess both lots of merchandise."

In support of its contention, the defendant also cites Customs Regulation 191.73, which provides that:

(a) *Exporter; reservation by manufacturer or producer.* The person named as exporter on the notice of exportation or in bill of lading, air waybill, freight waybill, Canadian Customs manifest, cargo manifest, or certified copies of these documents, shall be deemed to be the exporter and entitled to drawback, unless the manufacturer or producer shall reserve the right to claim drawback. The manufacturer or producer who reserves this right may claim drawback, and he shall receive payment upon production of satisfactory evidence that the reservation was made with the knowledge and consent of the exporter.

(b) *Agent or person designated to receive drawback.* Drawback may be paid to the agent of the manufacturer, producer, or exporter, or to the person the manufacturer, producer, exporter, or agent directs in writing to receive drawback payment.

19 C.F.R. § 191.73 (1990).

There is a question, however, whether Customs Regulation 191.73 was intended to limit the persons entitled to substitution same condition drawback. Customs Regulation 191.73 is found in subpart G of part 191, and appears to be solely a procedural regulation, identifying which person will receive payment from Customs. Instead, the substantive regulations on substitution same condition drawback are contained in subpart N, which is entitled "Same Condition and Rejected Merchandise Drawback."

In view of the statutory language enacted by Congress and the legislative history, the court concludes that, in enacting section 1313(j)(2), Congress did not intend to require that a claimant of substitution same condition drawback must be the exporter of the substituted merchandise.

## CONCLUSION

It is the conclusion of the court that, in denying the plaintiff substitution same condition drawback, the Customs Service acted illegally and in violation of its statutory authority. Hence, the action of the Customs Service must be vacated. Since it is not disputed that the plaintiff has satisfied the other requirements for drawback, plaintiff is entitled to drawback.

Accordingly, plaintiff's motion for summary judgment is granted, and defendant's cross-motion for summary judgment is denied.

## JUDGMENT

This action having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED: that the District Director of Customs at New Orleans, Louisiana, approve plaintiff's application for drawback of duty on Entry No. 2002–85–274995–9; and that such drawback of duty be paid according to 19 U.S.C. § 1313(j)(2), together with interest from

July 27, 1988, as allowed by 28 U.S.C. § 2644; and it is further

ORDERED, ADJUDGED, AND DE-CREED: that the Customs Service rescind C.S.D. 87–6 and modify or rescind, as appropriate, any decisions predicated upon C.S.D. 87–6, that are in conflict with the decision in this action; and it is further

ORDERED, ADJUDGED, AND DE-CREED: that the Customs Service amend Customs Regulation 191.141(h) and 191.73 in accordance with the decision in this action.