**The B.F. GOODRICH COMPANY,**
**Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 90–05–00228.**

United States Court of
International Trade.

May 12, 1992.

Supplemental Order June 9, 1992.

Thompson, Hine and Flory, Lewe B. Martin, Peter A. Greene and John C. Steinberger, on brief, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Jus-

tice, Carla Garcia–Benitez, Washington, D.C., for defendant.

## OPINION

MUSGRAVE, Judge.

### I. INTRODUCTION

This case involves "substitution same condition drawback," ("SSC drawback") 19 U.S.C. § 1313(j)(2) (1991), of polyvinyl chloride ("PVC") resins. Plaintiff The B.F. Goodrich Company ("Goodrich") exported PVC resins made in Western Canada by its Canadian subsidiary to its customers in the Western United States in 1986, and later exported fungible goods made by Goodrich in the Eastern United States to its Eastern Canadian customers. The Customs Service denied Goodrich's claim for SSC drawback on the grounds that Goodrich did not have possession of the imported PVC resins while those goods were in the United States. Plaintiff's Statement of Material Facts, at 3–4. Goodrich's subsequent protest was deemed denied on December 15, 1989. *Id.* at 4.

Goodrich argues that § 1313(j)(2) does not require that an exporter have possession of the imported goods after importation but before exportation of the substituted same condition goods, and that Customs unjustifiably required that Goodrich have had possession of the imported goods.[1] The government argues that because Goodrich did not legally possess the imported merchandise after importation, it did not comply with 19 U.S.C. § 1313(j)(2), and the Customs Service regulations interpreting it, primarily 19 C.F.R. § 191.141(h). Defendant's Opposition, at 9.

Goodrich claims that 19 C.F.R. § 191.141(h), is a substantive (or "legislative") rule and that its promulgation violated the Administrative Procedure Act ("APA") because it lacked prior notice or an opportunity for public comment. 5 U.S.C. § 553 (1991), Plaintiff's Brief, at 8. The government argues that because the regulation was one of several regulations updated following passage of the Trade and Tariff Act of 1984, neither an explanation nor prior notice or comment is required. Defendant's Brief, at 21–30.

Noting the similarities between this case and *Central Soya Co. v. United States*, 15 CIT ——, 761 F.Supp. 133 (1991), upheld and adopted, 953 F.2d 630 (1992), and reading the clear language of the statute (as set out below), the Court finds that there is no requirement in 19 U.S.C. § 1313(j)(2) that a drawback claimant possess the *imported* goods upon which a claim for drawback arises after importation. Furthermore, Customs regulation 19 C.F.R. § 191.141(h) is invalid as a notice and comment procedure is required under 5 U.S.C. § 553.

### II. STANDARD OF REVIEW

The controlling case on review of an agency's construction of a statute is *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. v. N.R.D.C.*, 467 U.S. 837,

---

1. Plaintiff's Brief, at 7–8. Although Goodrich may have had legal possession of the PVC resins after importation, it is assumed for the purposes of the cross-motions for summary judgment that they did not possess the imported goods. *Id. at* 7.

842–43, 104 S.Ct. 2778, 2781–82 (1984).[2]

## III. DISCUSSION

■ The first question presented is whether Congress has spoken to the issue at hand. The issue in this case is whether § 1313(j)(2), which only tangentially mentions imported goods, requires that a drawback claimant possess those goods in the United States. Section 1313(j)(2) provides in pertinent part:

(j) Same condition drawback.

. . . . .

(2) *If there is, with respect to imported merchandise* on which was paid any duty, tax, or fee imposed under Federal law because of its importation, *any other merchandise* (whether imported or domestic) that—

(A) *is fungible with such imported merchandise;*

(B) *is,* before the close of the three-year period beginning on the date of importation of the imported merchandise, *either exported or destroyed* under Customs supervision;

(C) *before such exportation* or destruction—

(i) is not used within the United States, and

(ii) *is in the possession of the party claiming drawback* under this paragraph; and

(D) is in the same condition at the time of exportation or destruction as was the imported merchandise at the time of its importation; then upon the exportation or destruction of such other merchandise the amount of each such duty, tax, and fee paid regarding the imported merchandise shall be refunded as drawback, but in no case may the total drawback on the imported merchandise, whether available under this paragraph or any other provision of law or any combination thereof, exceed 99 percent of that duty, tax, or fee.

19 .U.S.C. § 1313(j)(2) (1991) (emphasis added).

Section 1313(j)(2) does not state with the absolute precision which might be desired when the drawback claimant must possess the exported goods. The operative portion of § 1313(j)(2) for purposes of this case can be condensed, to clearly state:

with respect to [duty-paid] imported merchandise ..., any *other* [fungible] merchandise ... [which] is ... exported ... [and] ... before such exportation ... is in the possession of the party claiming drawback [is qualified for drawback].

From this Court's reading of the statute, it is clear that the possession requirement attaches only to the *exported* goods, not to the imported goods. The operative portion of § 1313(j)(2) with regard to imported goods mentions only that a duty, tax or fee was paid because of their importation. Therefore, § 1313(j)(2) requires only that a drawback claimant have paid the duty, tax or fee for the privilege of importing the goods.

The Customs regulation in question, 19 C.F.R. § 191.141(h) provides:

(h) Substitution same condition drawback. If legal person X *possesses imported merchandise* (the designated merchandise) *during some time interval in period A* (defined below) and also possesses other merchandise fungible with it (the substituted merchandise) during the same or different time interval in period A, then 99 percent of the duty paid on the designated merchandise will be refunded as drawback, provided that:

(1) The designated merchandise was in the same condition as imported either at the time of substitution, the time X used it in manufacturing, or at the time X transferred it to another person, whichever occurs first;

(2) The substituted merchandise is in the same condition when exported or destroyed under Customs supervision as was the designated merchandise when imported;

---

**2.** *See also,* Scalia, Judicial Deference To Administrative Interpretations Of Law, 1989 Duke L.J. 511.

(3) X does not issue a certificate of delivery covering the designated merchandise nor a certificate of manufacture and delivery covering articles manufactured or produced therefrom; and

(4) X maintains records to establish requirements, (1), (2), and (3) of this section and also complies with all relevant requirements of § 191.141(a) through (g) of this chapter.

*Period A (referred to above) begins when X receives the merchandise and ends three years after the importation of said merchandise.*

19 C.F.R. § 191.141(h) (1991) (emphasis added).

## A. Congressional Intent

The parties agree that Congress intended by enacting 19 U.S.C. § 1313(j)(2), to expedite merchandise handling and inventory control and to simplify the procedures and requirements for obtaining a refund of duties paid. *See*, H.Rep. 1015, 98th Cong., 2d Sess. 64 (1984), 1984 U.S.Code Cong. & Admin.News 4960, 5023. Necessarily, that intent involves both domestic and multinational companies which import and export fungible goods on a regular basis. There is no indication that Congress intended to limit the benefits of § 1313(j)(2) to companies with domestic operations only. Congress likely intended to aid all companies, domestic and multinational, to obtain drawback for fungible exported goods without undue administrative bookkeeping.

Customs argues that Congress intended by implication to require commingling of the imported and exported goods and that as a result the imported goods must be made part of the claimant's domestic inventory. The government argues, in essence, that Congress intended to require drawback claimants to use *only* their inventory in the United States as a basis for drawback claims. One implication of the commingling argument is that § 1313(j)(2) would favor American companies without foreign operations, because only those companies would be able to integrate SSC drawback into the normal course of business. Import/export operations which would qualify for SSC drawback almost inevitably require subsidiaries outside the United States to handle administrative affairs in the host country. Defendant would discriminate against these companies by requiring that imports from foreign subsidiaries pass thru the inventory of the U.S. parent. Multinational companies such as Goodrich would be unable to ship goods produced abroad directly to U.S. customers and claim drawback for fungible exports from their U.S. plants. They would be forced to import the goods to a U.S. plant, then re-ship them to their U.S. customers. The operations of U.S.–only businesses would not be affected because their exports and imports would necessarily come from or go to the U.S. company.

Plaintiff points out that Customs had granted same condition drawback on a FIFO basis before Congress enacted § 1313(j)(2). Plaintiff's Reply, at 17, and citations contained therein. The previous system required that drawback claimants keep separate the substituted and imported goods. Allowing 19 C.F.R. § 191.141(h) to stand would, in effect, nullify the newer, more liberal requirements for SSC drawback enacted by Congress. Customs may not backslide to the previous restrictions on drawback when Congress has clearly eased those requirements.

## B. Legislative History Of § 1313(j)(2) Is Not Contrary To The Language Of The Statute

Goodrich argues that Congress did not include any language requiring possession of imported merchandise in the bill as passed, and that the language cited by the government from the so-called legislative history was deleted from the final version. Plaintiff's Reply, at 3–5. Although the Court finds the statute clear on its face, the legislative history should be consulted to discover if Congress' actual intent was contrary to the language of the statute. Section 191.141(h) might be upheld if the legislative history contains "a 'clearly expressed legislative intention' contrary to [the language of the statute], which would

require us to question the strong presumption that Congress expresses its intent through the language it chooses." *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213, n. 12, 94 L.Ed.2d 434 (1987) (citations omitted). The legislative history is clear enough to determine only that Congress did not intend to require possession of the imported goods. *See, Central Soya Co. v. United States*, 15 CIT ——, ——, 761 F.Supp. 133, 139 (legislative history of § 1313(j)(2) is not a "model of clarity").

*Central Soya* noted that several versions of what became 19 U.S.C. § 1313(j)(2) were proposed. *Central Soya*, 15 CIT at ——, ——, 761 F.Supp. at 139. The first bill (H.R. 4316) required that a drawback claimant be the same person as the importer of the designated merchandise. *Central Soya*, 15 CIT at ——, 761 F.Supp. at 138. The final version of the bill (H.R. 3398) required only that the *substituted* (exported) merchandise must have been in the possession of the party claiming drawback. *Id.* The Conference Committee Reports for each bill contained identical language, that "[d]rawback is provided if the same person requesting drawback ... exports from the United States ... fungible merchandise...." H.R.Rep. No. 1015, 98th Cong., 2d Sess. 64, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4960, 5023, *cited in Central Soya*, 15 CIT at ——, 761 F.Supp. at 138. The Conference Report language relied upon by the government is clearly unrelated to the text of the final bill, an interpretation supported by a letter from the Congressman who drafted both bills. *Central Soya*, 15 CIT at ——, 761 F.Supp. at 139. As a result, the Court may ignore that section of the Report. *American Hospital Assoc. v. N.L.R.B.*, —— U.S. ——, ——, 111 S.Ct. 1539, 1545–46, 113 L.Ed.2d 675, 687–88 (1991), citing *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 168, 109 S.Ct. 2854, 2861, 106 L.Ed.2d 134 (1989) (legislative history that cannot be tied to the enactment of specific statutory language ordinarily carries little weight in judicial interpretation of the statute).

The statute clearly does *not* include the possession requirement that Customs attempts to graft onto it. The statute is conspicuously silent as to that requirement. There is no other indication from the legislative history that such a requirement is to be inferred. The plain language of the statute states that, with respect to imported goods "on which was paid any duty ...," certain other *exported* goods might qualify for drawback. 19 U.S.C. § 1313(j)(2). "No other condition is stated [for imported merchandise to qualify as the basis of a drawback claim], and the only rational interpretation is, none is meant." *Madison Galleries, Ltd. v. United States*, 7 Fed.Cir. (T) 56, 60, 870 F.2d 627, 631 (1989).

The possession requirement was considered by Congress but rejected when it enacted § 1313(j)(2). Neither the statutory language nor the legislative history supports Customs' requirement that the claimant of SSC drawback have been the importer of the duty-paid merchandise.

**C. 19 U.S.C. § 1313 Is Not So Silent Or Ambiguous That § 191.141(h) Is Permissible**

 That the statute does not include the requirement that Customs would impose does not automatically mean that the Court must proceed to the second step of the *Chevron* analysis. *Chevron* instructs that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781. The government argues that the statutory language is silent or ambiguous on the requirement of possession, and that Customs' interpretation is a permissible construction of the statute, in light of the legislative history. Defendant's Reply, at 6, citing *Neptune Mut. Ass'n, Ltd. of Bermuda v. United States*, 862 F.2d 1546, 1549 (Fed.Cir.1988) ("Because a literal interpretation of the statute leads to a result at variance with the policy of the [statute], [the court should] turn to the legislative history of the statutes in question ...").

The government's argument under *Neptune Mutual* is backwards. As is often the case, the legislative history of § 1313(j)(2) is ambiguous, not the statute. Indeed, as shown above, the language in the Conference Report of H.R. 3398 is an unreliable indicator of the intent of the drafters of the bill. A literal interpretation of the statute delivers results in accordance with the liberalizing policy behind the statute.

Section 1313(j)(2) is not so silent or ambiguous that the Court should prefer the Conference Report, or other portions of the legislative history, to the language of the statute. The requirements for imported merchandise are simple; indeed, most of § 1313(j)(2) deals with the requirements that *exported* merchandise must meet. Section 1313(j)(2) clearly and unambiguously states that imported merchandise, "on which was paid any duty, tax, or fee imposed under Federal law because of its importation" qualifies for drawback if the substituted goods fulfill the other requirements (fungibility, exportation, possession before export, etc.). 19 U.S.C. § 1313(j)(2). To hold otherwise would ignore the plain language of the statute. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82 (courts must give effect to "the unambiguously expressed intent of Congress").

Congress' intent to lift some of the administrative burden of SSC drawback is clearly expressed in § 1313(j)(2). One of the burdensome requirements of the FIFO drawback system which preceded § 1313(j)(2), was that a claimant needed to show which merchandise entered into the domestic inventory at which time, and to keep those inventories separate. See, cases cited at p. 17 of Plaintiff's Memorandum. The Court finds that Congress intentionally eliminated this requirement when presented with the option to retain some sort of possession requirement for imported goods.

**D. A Possession Requirement Cannot Be Inferred From Other Sections Of 19 U.S.C. § 1313**

■ The government argues that the possession requirement may be inferred

from the design of the drawback statute taken as a whole. Defendant's Reply, at 3. Because § 1313(j)(2) does not specifically address the relationship between the drawback claimant and the imported merchandise, the government infers a possession requirement from the manufacturing drawback statute, 19 U.S.C. § 1313(b) (1991). Defendant's Reply, at 6. However, it is clear that such inferences may not be drawn. *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (" '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' ") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)).

Customs may not graft onto the apparent purpose behind § 1313(j)(2) (easing the administrative burden of SSC drawback) the additional requirement that a claimant possess the goods once imported. *See, M.M. & P. Maritime Advancement, Training, Educ. & Safety Program (Mates) v. Dept. of Commerce*, 729 F.2d 748, 752, 2 Fed.Cir. (T) 36, 40 (1984) (Customs improperly required that goods imported for "educational or scientific" purposes must be used in formal science-oriented training in order to qualify for duty-free entry).

**IV. THE REGULATION WAS ENACTED IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

■ Customs enacted 19 C.F.R. § 191.-141(h) following passage of the Trade and Tariff Act of 1984, which liberalized requirements for SSC drawback. Customs argues that it did not follow the APA notice and comment procedures because the changes made were "nonsubstantive and essentially ... procedural." T.D. 85–123, 19 Cust.Bull. 276 (1985). Customs stated at the time that "[i]nasmuch as these amendments merely conform the Customs Regulations to existing law or practice, pursuant to 5 U.S.C. § 553(b)(B), [sic] no-

tice and public procedure thereon are unnecessary...." *Id.,* at 282.

Under the APA, 5 U.S.C. § 553, *et. seq.,* advance publication and an opportunity for public participation are required for all rules except "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice," or "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(A)–(B) (1988). Customs claims that 19 C.F.R. § 191.141(h) simply interprets and updates longstanding requirements following the passage of the Trade and Tariff Act of 1984. Customs enacted § 191.141(h) "merely [to clarify] the requirements Congress intended to exact before a drawback claim could be allowed." Defendant's Opposition, at 34 (footnote omitted). The rule enacted does not include a statement that notice and public comment were impracticable, unnecessary or contrary to the public interest. Customs argues that none is required because the rule was an interpretation that "merely clarifies the existing duties of a drawback claimant." Defendant's Opposition, at 38.

However, Customs established a substantive new requirement that does not exist in the statute. As such, 19 C.F.R. § 191.141(h) is a substantive rule for which a notice and comment period, among other things, is required. 5 U.S.C. § 553(b)–(c); *Batterton v. Marshall,* 648 F.2d 694, 208 U.S.App.D.C. 321 (1980).

## A. Customs' Mandate To Interpret § 1313(j)(2) Does Not Extend To Adding Requirements

■ The *Central Soya* Court addressed and rejected the Customs Service's argument that it had "an extraordinarily broad mandate," within the grant of legislative authority given in 19 U.S.C. § 1313(*l*), to "'prescribe' substantive rules regarding specific subjects, which include 'the designation of the person to whom any refund or payment of drawback shall be made.'"

*Central Soya,* 15 CIT at ——, 761 F.Supp. at 139.

It is axiomatic that even if the APA requirements were complied with (i.e. notice and comment, hearings, etc.) the Customs Service would not automatically be authorized to amend and enlarge the scope of 19 U.S.C. § 1313(j)(2). *Batterton v. Marshall,* 648 F.2d at 701–702 (legislative or substantive rules can only be issued if Congress has delegated to the agency the power to promulgate binding regulations in the relevant area).

As it now stands, 19 C.F.R. § 191.141(h) is a modification, rather than an interpretation of 19 U.S.C. § 1313(j)(2). The requirement that drawback claimants have possession of the goods in the United States is not merely an interpretation of the statutory language because it actually prescribes new requirements not found anywhere in the statute. *Batterton v. Marshall,* 648 F.2d at 705–706 and 711 ("Normally a judicial determination of a procedural defect requires invalidation of the challenged rule"). The Court again rejects the government's contention that the Customs Service has "an extraordinarily broad mandate" to interpret § 1313(j)(2). The regulation, 19 C.F.R. § 191.141(h), is invalid.

In *Central Soya,* the Court ordered that Customs amend 19 C.F.R. § 191.141(h) in accordance with that decision. Customs must also comply with the APA notice and comment procedures until a new regulation is promulgated. Until such procedures are complied with, 19 U.S.C. § 191.141(h) is suspended and shall have no force or effect, although Customs shall not use the invalidation of the regulation as an excuse to refuse drawback to otherwise qualified claimants. Until a new rule is promulgated, Customs shall allow SSC drawback claims based solely on the language of 19 U.S.C. § 1313(j)(2), and case law interpreting it.

## V. CONCLUSION

Customs improperly required that Goodrich demonstrate that it possessed the imported merchandise from which Goodrich's drawback claim arose: 19 U.S.C.

§ 1313(j)(2) contains no such requirement. A careful consideration of the legislative history demonstrates that Congress did not intend otherwise. 19 C.F.R. § 191.141(h) was an improperly promulgated substantive rule, with no justification in either the statute or the legislative history. As a result, it must have no force or effect.

Because of this Court's ruling, Counts 3 and 4 of the Complaint are moot and hereby dismissed.

SO ORDERED.

## JUDGMENT ORDER

After due deliberation and consideration of the briefs filed and arguments made in this case, it is hereby ORDERED:

1. That plaintiff The B.F. Goodrich Company's ("Goodrich") motion for summary judgment is hereby granted as to counts I and II of plaintiff's complaint; and further,

2. That the District Director of Customs at the Port of Cleveland shall reliquidate, annotate, and mark Drawback Entries 41–0012405–5, 41–0012410–5, 41–0012411–3, 41–0012412–1, within sixty days after this judgment becomes final to determine the final drawback amount; and within ninety days after this judgment becomes final, the District Director shall pay plaintiff any additional amount by which the final drawback amount exceeds the amount already paid to plaintiff, or if the District Director finds that the amount paid pursuant to paragraph one of this order exceeds the final drawback amount, the District Director shall request repayment of, and plaintiff shall repay, the overpayment within 90 days after this decision becomes final; and further,

3. That the District Director of Customs at the Port of Cleveland shall refund Goodrich immediately the amounts claimed by Goodrich under Drawback Entries 41–0012405–5, 41–0012410–5, 41–0012411–3, 41–0012412–1 together with interest from May 1, 1990, as provided by 28 U.S.C. § 2644 within thirty days of this judgment; and further,

4. That to the extent that the Customs regulation codified at 19 C.F.R. § 191.-141(h) imposes a requirement that a drawback claimant possess within the United States the imported merchandise on which drawback is claimed, such regulation is in excess of Customs' statutory authority and is an abuse of discretion; and further,

5. That the Customs regulation codified at 19 C.F.R. § 191.141(h) was promulgated without public notice and comment as required by the Administrative Procedure Act, 5 U.S.C. § 553, and without any reasoned explanation for its adoption, and shall have no force or effect unless the procedures outlined in 5 U.S.C. § 553 et seq. are followed; and further,

6. That the Customs Service is hereby enjoined from enforcing the Customs regulation codified at 19 C.F.R. § 191.141(h) to the extent that it requires possession of imported merchandise and is inconsistent with this decision; and further,

7. That the Customs Service shall continue to grant substitution same condition drawback claims based on the requirements established by 19 U.S.C. § 1313(j)(2), and case law construing it; and further,

8. That the Customs Service shall file with the Court, within one hundred and twenty days after the judgment becomes final, a report outlining the measures it has taken to comply with this judgment, and

9. That plaintiff's claims in counts III and IV of its complaint are dismissed as moot.

SO ORDERED.

## SUPPLEMENTAL ORDER

After due deliberation and consideration of the briefs filed and arguments made on the government's motion to alter or amend the judgment in this case, it is hereby ORDERED:

1. That the Customs Service must pay plaintiff the amount claimed in its Complaint, *viz.* $191,153.07, plus applicable interest from May 1, 1990, as provided in 28 U.S.C. § 2644, on or before June 25, 1992.

Editor's Note: The amendments have been incorporated in the published Judgment Order