**NATIONAL WILDLIFE FEDERATION, et al., Plaintiffs,**

v.

**William P. CLARK, Defendant.**

**Civ. A. No. 83–2648.**

United States District Court, District of Columbia.

Jan. 9, 1984.

As Amended Jan. 10, 1984.

G. Robert Witmer, Jr., Rochester, N.Y., Jane E. Kirtley, Nixon, Hargrave, Devans & Doyle, Norman L. Dean, Jr., National Wildlife Federation, Washington, D.C., for plaintiffs.

F. Henry Habicht, II, Acting Asst. Atty. Gen., Robert D. Daniel, Sp. Litigation Counsel, Michael W. Reed, Peter R. Steenland, Jr., Land & Natural Resources Div., Washington, D.C., for defendant.

John A. Macleod, Timothy M. Biddle, David B. Siegel, Crowell & Moring, Washington, D.C., for defendants-intervenors North American Coal Corp., The Falkirk Mining Co., The Missouri Valley Properties Co., and Baukol-Noonan, Inc.

Stanley M. Brand, Sp. Counsel, Brand, Lowell, Nickerson & Dole, Steven R. Ross, Gen. Counsel to the Clerk, U.S. House of Representatives, Michael L. Murray, Asst. Counsel to the Clerk, Washington, D.C., for

plaintiff-intervenor Honorable Morris K. Udall.

## MEMORANDUM ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

OBERDORFER, District Judge.

Defendant is under a preliminary injunction, entered against his predecessor, which restrains him from issuing leases to certain coal lands in Montana and North Dakota, pending decisions on cross-motions for summary judgment.[1] Those motions are now before the Court.

One of the plaintiffs, Chairman Udall of the House Interior and Insular Affairs Committee, suggests that the controversy is mooted by recent legislation which bars further lease sales in the area subject to the preliminary injunction until 90 days after Congress receives the report of the so-called Linowes Commission. Pub.L. No. 98–146, § 108, November 4, 1983. Indeed, Chairman Udall suggests that his very standing to sue was based on his statutory right to have the Secretary stay implementation of the lease offers until Congress could have an opportunity to act. Chairman Udall's Suggestion of Mootness and Opposition to Defendant's Motion for Summary Judgment at 3 n. 2. In the alternative Chairman Udall urges the Court to hold this case until the so-called moratorium expires or Congress enacts some other law on the subject. Plaintiffs National Wildlife Federation and The Wilderness Society join in the request for a stay but do not support the suggestion that the controversy is moot.

▉ Defendant, however, vigorously challenges the suggestion of mootness and presses for decision on the merits. Defendant points out that the House Committee has not rescinded the withdrawal ordered by its Resolution adopted pursuant to section 204(e) of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1714(e), and that the injunction sought by plaintiffs would enforce what is in effect a moratorium for up to three years.[2] In contrast, the moratorium recently legislated in anticipation of the Commission's report will expire in a few months at the latest. Moreover, defendant has made no commitment which would eliminate the prospect of a continuing violation of the Resolution once the latter moratorium expires. Therefore, neither "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). The possibility that the Committee may rescind the Resolution or that Congress may pass a new law which could moot the controversy is necessarily speculative. *Compare Iron Arrow Honor Society v. Heckler*, —— U.S. ——, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983). Accordingly, the suggestion of mootness must be rejected.

The plaintiffs' suggestion that the Court stay the action pending the report of the Commission and further action by Congress in order to avoid decision on the constitutionality of an Act of Congress has considerable appeal.[3] But the Court is persuaded that it is not necessary to reach "the nerve-center Constitutional questions." *See* Chairman Udall's Suggestion of Mootness at 4. The solution more fully described below will require the Secretary to honor his own regulation unless and

---

**1.** *See National Wildlife Federation v. Watt*, 571 F.Supp. 1145 (D.D.C.1983) (granting preliminary injunction).

**2.** At a hearing on the pending motions on Dec. 16, 1983, counsel for Chairman Udall indicated that the Committee was unlikely to meet before Congress reconvenes on Jan. 23, 1984, so that the Resolution could not be reconsidered before that time. There was a hint, but no commitment, that the Committee would withdraw the Resolution.

**3.** Defendant vigorously urges that section 204(e) is unconstitutional, so that continuing the preliminary injunction in force pending congressional action is to continue an invalid order. But defendant overlooks the fact that the preliminary injunction has been reviewable by appeal since it was expeditiously entered on Sept. 28, 1983, just so defendant could seek appellate review.

until he has rescinded or amended it after an appropriate rulemaking proceeding, or until the Committee has vacated its Resolution, and therefore does not require a judicial decision on the constitutional issue, at least until the rulemaking process is complete.

For these reasons the Court has proceeded to a decision on the merits after carefully considering the briefs filed by the parties on the merits and the additional oral argument. This decision is based substantially on the rationale for the decision granting the plaintiffs' motion for preliminary injunction and more fully stated in the Memorandum with Respect to Preliminary Injunction, *National Wildlife Federation v. Watt*, 571 F.Supp. at 1156–58.

Defendant persists in his predecessor's claim that he was not required to conduct a rulemaking before deciding whether the *Chadha* [4] decision invalidated section 204(e) and the parallel regulation adopted to implement that statute, 43 C.F.R. § 2310.5. He invokes in support of this position a Supreme Court decision holding that the National Labor Relations Board (NLRB) had a discretionary choice between *ad hoc* litigation and rulemaking as a means of determining whether particular employees were "managerial employees" within the meaning of the National Labor Relations Act as interpreted by the Supreme Court. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 291–93, 94 S.Ct. 1757, 1770–1771, 40 L.Ed.2d 134 (1974). The defendant concedes that if in the present case the Secretary had chosen to rescind the regulation, informal rulemaking would have been required. Statement of Points and Authorities in Support of Defendant's Motion for Summary Judgment at 30 n. 6. Here, however, the argument is that such a requirement applies only with respect to "validly prescribed" regulations. *See Service v. Dulles*, 354 U.S. 363, 372, 77 S.Ct. 1152, 1157, 1 L.Ed.2d 1403 (1957). Since this regulation was prescribed in deference to a provision of section 204(e), which the Secretary has determined to be invalidated by

*Chadha*, it is, according to the Secretary, not "validly prescribed" and is a proper subject of rejection by him "on an *ad hoc* basis." Defendant's Statement at 34.

Defendant's claim cannot withstand the cold light of the language of the Administrative Procedure Act' (APA) or the rising number of appellate decisions condemning *ad hoc* actions by Department heads who fail to apply to changes in regulations the statutory requirements routinely followed in their creation. Section 551 of the APA defines rulemaking as the "agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5). Section 553 fixes minimal requirements of notice and comment for such rulemaking. Congress made these provisions specifically applicable to the Federal Land Policy and Management Act of 1976, and specifically invited judicial review of the Secretary's administration of that Act such as is available by judicial review of administrative rulemaking under the APA. *See* 43 U.S.C. §§ 1701(a)(6), 1740. The Supreme Court and our Court of Appeals have repeatedly set aside department and agency attempts to amend or rescind outstanding regulations without strict adherence. to a process of reasoning on the record with the benefit of informed suggestions from those affected by the proposed rescission or amendment. *See Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, —— U.S. ——, 103 S.Ct. 2856, 2871, 77 L.Ed.2d 443 (1983); *Environmental Defense Fund, Inc. v. Environmental Protection Agency*, 716 F.2d 915, 920–21 (D.C. Cir.1983); *International Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795 (D.C.Cir.1983). Defendant has not effectively answered plaintiffs' contention that these decisions govern this case.

In the context of these decisions, defendant's reliance on *NLRB v. Bell Aerospace Co.* is misplaced. In that case, the NLRB had a disciplined choice: it could start a judicially reviewable process either by a rulemaking or by an enforcement proceed-

---

4. *INS v. Chadha*, —— U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

ing. In either event, the Board had to take a judicially reviewable initiative. Here, by contrast, defendant's failure to proceed by rulemaking opened up for him an opportunity to escape judicial review of his constitutional law decision entirely. Unlike the NLRB, the defendant did not require any court action to implement his decision. The defendant's action would have "made law," unless it was challenged. In fact, there was no certainty that the decision would or could be challenged in court; the wrong committed, if there was one, injured the public in general more (and more directly) than it injured any person likely to react with a timely court challenge. Indeed, when the original plaintiffs here did rise to challenge defendant's action, he resisted their challenge on standing grounds. *See* Statement of Points and Authorities in Opposition to Plaintiffs' Motion for Preliminary Injunction at 12–16.

■ The statute which defendant declared to be, in part, unconstitutional specifically emphasized the importance of administrative process and judicial review of the defendant's decisions on the leases at issue here. *See* 43 U.S.C. §§ 1701(a)(6), 1740. Yet so far as defendant was concerned, his action was unreviewable. He was prepared to decide by himself an original constitutional question affecting the public's property contrary to what some (possibly including Congress) considered to be the public interest. And he embarked on this course without affording the public any opportunity for notice and comment, or, so far as he was concerned, without opportunity for judicial review—all in reliance on the *ex parte* legal opinion of his Solicitor's Office and informal advice from the Department of Justice. When the Supreme Court gave the NLRB a choice between rulemaking and *ad hoc* litigation to test its interpretation of a Supreme Court decision, that Court did not intend to give an agency or department the option between judicially reviewable rulemaking and *ad hoc* decisions which it could protect from effective judicial review. This is not to disparage the professional ability of the Office of the Solicitor or the staff of the Department of Justice. However, an agen-

cy or department head deciding an important and original constitutional question will "benefit from outside suggestions" as much or more than courts, including the Supreme Court, who are required by due process and common sense to hear both sides of a constitutional issue before they decide it. *See Environmental Defense Fund, Inc. v. Environmental Protection Agency,* 716 F.2d at 920.

■ This further examination of the problem confirms the rationale of the preliminary injunction that the defendant was bound by 43 C.F.R. § 2310.5 to honor the Committee Resolution, unless and until he rescinded the regulation after notice and comment as prescribed by the APA, 5 U.S.C. § 553, or the Committee rescinded its Resolution. *See National Wildlife Federation v. Watt,* 571 F.Supp. at 1158.

Accordingly, the accompanying Order will grant plaintiffs' motion for summary judgment, deny defendant's cross-motion, and enjoin the defendant to honor the Committee Resolution as required by 43 C.F.R. § 2310.5, unless and until the defendant has complied with the rulemaking requirements of APA and exposed the result to judicial review as contemplated by that Act, or the Committee has rescinded the Resolution.