963 F.2d 356
 14 ITRD 1001
 NORCAL/CROSETTI FOODS, INC., Patterson Frozen Foods, Inc.,
and Richard A. Shaw, Inc., Plaintiffs-Appellees,
v.
The UNITED STATES, U.S. Customs Service, U.S. Department of
Treasury, Nicholas Brady, John Durant and Howard
B. Fox, Defendants-Appellants.
 No. 91-1295.
 United States Court of Appeals,
Federal Circuit.
 May 4, 1992.
 
 Robert Ted Parker, Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel, San Francisco, Cal., argued, for plaintiffs-appellees. With him on the brief was Richard D. Maltzman.
 Barbara Epstein, Commercial Litigation Branch, Dept. of Justice, New York City, argued, for defendants-appellants. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office. Also on the brief was Claib L. Cook, Offices of General Counsel, U.S. Customs Service, of counsel.
 Irwin P. Altschuler, Donald S. Stein and Claudia G. Pasche, Brownstein, Zeidman & Schomer, Washington, D.C., were on the brief for amicus curiae, Covemex, S.A. De C.V.
 Paul C. Rosenthal and Michael R. Kershow, Collier, Shannon & Scott, Washington, D.C., were on the brief for amicus curiae, Nat. Juice Products Ass'n. Also on the brief were David C.G. Kerr and Ansley Watson, Jr., MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla.
 Gary Jay Kushner, Timothy C. Stanceu and David W. Phillips, Hogan & Hartson, Washington, D.C., were on the brief for amicus curiae, Grocery Mfrs. of America, Inc.
 Before NIES, Chief Judge, NEWMAN and MAYER, Circuit Judges.
 MAYER, Circuit Judge.
 
 
 1
 The government appeals the judgment of the United States Court of International Trade, 758 F.Supp. 729 (Ct. Int'l Trade 1991), finding subject matter jurisdiction and compelling the United States Customs Service to withdraw a ruling letter approving certain practices of marking imported frozen produce. We reverse and remand with instructions to dismiss.
 
 Background
 
 2
 Appellees, Norcal/Crosetti Foods, Inc., Patterson Frozen Foods, Inc., and Richard A. Shaw, Inc. (collectively Norcal), are California-based frozen produce packaging companies. On May 9, 1988, Norcal filed a request with the United States Customs Service (Customs) seeking a determination that certain competitors' packages of imported frozen produce do not comply with the "conspicuous" marking requirements of 19 U.S.C. § 1304[1] and its implementing regulation 19 C.F.R. § 134[2]. More specifically, Norcal requested a ruling requiring that
 
 
 3
 packages of imported frozen produce intended for sale to the consumer bear the name of the country of origin on the front panel of the package.... [and] that the lettering of such markings should be at least as large as the lettering of the product description and/or that the marking appear in a type or color vividly contrasting with the rest of the front panel.
 
 
 4
 Accompanying the request were samples of imported frozen produce packages with country of origin markings on the rear, side, or front panel of the package.
 
 
 5
 Customs responded by issuing a ruling letter stating that the country of origin marking on the submitted samples was "conspicuous" within the meaning of section 1304 and 19 C.F.R. § 134.41(b), and that country of origin markings need not appear in the manner suggested by Norcal. Dissatisfied with this determination, Norcal filed suit against Customs in the Northern District of California alleging that by misinterpreting section 1304, Customs failed to ensure proper marking. By stipulation, the case was transferred to the Court of International Trade on August 30, 1989, pursuant to 28 U.S.C. § 1631 (1988). The government expressly reserved its jurisdictional defenses.
 
 
 6
 On November 8, 1989, the government moved to dismiss the case for lack of jurisdiction, which motion the court denied. 731 F.Supp. 510 (Ct. Int'l Trade 1990). The parties subsequently cross-moved for summary judgment on the merits. The court granted summary judgment for Norcal, repeating its conclusion that it had subject matter jurisdiction and holding that the country of origin of imported frozen produce must, at minimum, be marked on the front or most prominent panel of the package in order to be "conspicuous" within the meaning of section 1304. 758 F.Supp. at 741. The court ordered Customs to withdraw all prior decisions or rulings not in accordance with its decision, and to issue a new ruling letter reflecting the court's interpretation of the statute within 90 days. The government appealed.
 
 Discussion
 
 7
 Pursuant to 28 U.S.C. § 1292(c)(1) (1988), this court has jurisdiction over an appeal from interlocutory orders described in section 1292(a), which include orders granting injunctive relief. In its original complaint, Norcal explicitly requested an injunction as a form of relief. The trial court's amended judgment does not expressly characterize the relief as injunctive, but its characterization is not controlling. The true nature of the trial court's order is what matters:
 
 
 8
 [N]otwithstanding the court's refusal to style it as such.... "[f]or purposes of appeal, an injunction is an order requiring a party to do or refrain from doing something that is an integral part of the very matter in litigation...." J. Moore, J. Lucas & K. Sinclair, Moore's Federal Practice, p 65.21 (1989).
 
 
 9
 NTN Bearing Corp. of America v. United States, 892 F.2d 1004, 1005, 1006 (Fed.Cir.1989). In its amended judgment, the trial court announces a detailed interpretation of section 1304 imposing specific, novel requirements for marking imported frozen produce. It then orders Customs to revoke all prior decisions and rulings not in accordance with its interpretation, and to submit a consistent ruling letter within 90 days. 758 F.Supp. at 742. Such relief falls squarely within the bounds of section 1292(c) as contemplated by NTN Bearing.
 
 
 10
 The government contends that the Court of International Trade lacked jurisdiction over Norcal's appeal. It is a "well-established principle that federal courts ... are courts of limited jurisdiction marked out by Congress." Aldinger v. Howard, 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). The jurisdiction of the Court of International Trade is therefore "limited to those subjects encompassed within a statutory grant of jurisdiction." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). The statute defining the general jurisdiction of the Court of International Trade is 28 U.S.C. § 1581 (1988). National Corn Growers Ass'n v. Baker, 840 F.2d 1547, 1555 (Fed.Cir.1988). In the part relevant here, section 1581 provides:
 
 
 11
 (b) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516 of the Tariff Act of 1930 [now codified as amended at 19 U.S.C. § 1516 (1988) ]....
 
 
 12
 (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section ..., the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for-- ...
 
 
 13
 (4) administration and enforcement with respect to the matters referred to in ... subsections (a)-(h) of this section....
 
 
 14
 Subsections (a)-(h) delineate particular laws over which the Court of International Trade may assert jurisdiction. National Corn Growers, 840 F.2d at 1555.
 
 
 15
 Subsection (b) provides exclusive jurisdiction over civil actions commenced under 19 U.S.C. § 1516 (1988). Section 1516 is a detailed framework by which domestic manufacturers, producers, wholesalers, unions, and trade associations can file petitions challenging Customs' determinations on the appraised value, the classification, or rate of duty imposed upon designated imported merchandise. The framework allows domestic parties access to classification and rate of duty information on designated merchandise, 19 U.S.C. § 1516(a)(1) (1988), requires publication of contested determinations, id. § 1516(c), and provides a right for importers to participate in the administrative proceedings and to be parties in interest in proceedings before the Court of International Trade, id. § 1516(e); 19 C.F.R. § 175.21(a) (1991). Subsection 1516(b) also provides a specific time limitation when revised determinations must be applied to imported goods.
 
 
 16
 Subsection 1581(i) is a "catch-all" provision, allowing the trial court to take jurisdiction over designated causes of action founded on other provisions of law. See National Corn Growers, 840 F.2d at 1556, 1557. But unambiguous precedents of this court make clear that its scope is strictly limited: "Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963 (Fed.Cir.1987) (emphasis added); accord National Corn Growers, 840 F.2d at 1557. This preserves the congressionally mandated procedures and safeguards, see e.g., 19 U.S.C. § 1516 (1988), provided in the other subsections, see National Corn Growers, 840 F.2d at 1555, 1556, absent which litigants could ignore the precepts of subsections (a)-(h) and immediately file suit in the Court of International Trade under subsection (i). Id. at 1556.
 
 
 17
 After rejecting Norcal's suggestion of jurisdiction under subsection 1581(h), the trial court asserts jurisdiction pursuant to subsection 1581(i)(4). See 758 F.Supp. at 733, 734. The assertion is grounded in the court's supposition that Norcal could not have secured relief under section 1516, thus precluding jurisdiction under subsection 1581(b):
 
 
 18
 Section 1516 is specifically restricted to petitions by interested parties to challenge "the appraised value, the classification, or rate of duty [of imported goods]." 19 U.S.C. § 1516. If Norcal had come to this Court alleging that jurisdiction was available under § 1516, the government would surely (and more convincingly) have challenged the appropriateness of shoe-horning an action concerning the proper marking of merchandise into a jurisdictional statute concerned with appraised value, classification or rate of duty.... Norcal can proceed under 28 U.S.C. § 1581(i)(4) because its claim would be barred under any other portion of § 1581. [Id. at 733 (citation omitted).]
 
 
 19
 We disagree. The essence of the relief requested by Norcal is a ruling announcing a new interpretation of section 1304, dictating specific marking requirements for frozen produce. Such relief can result from a section 1516 classification and rate of duty challenge. 19 U.S.C. § 1304(f) (1988) provides:
 
 Additional duties for failure to mark
 
 20
 If at the time of importation any article (or its container, as provided in subsection (b) of this section) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) of this section) marked after importation in accordance with the requirements of this section ... there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. Such duty shall be levied, collected, and paid in addition to any other duty imposed by law and whether or not the article is exempt from the payment of ordinary customs duties....
 
 
 21
 Norcal alleges that certain imported frozen produce is not marked as required by section 1304. In accordance with subsection 1304(f), improperly marked goods are subject to a 10 percent ad valorem duty. Having determined the subject frozen produce fully complied with section 1304, Customs failed to levy such duty. Accordingly, Norcal could have petitioned Customs challenging the rate of duty of the imported produce under section 1516. See Diamond Match Co. v. United States, 49 CCPA 52, 53-56 (1962) (classification and rate of duty, as determined by country of origin marking, challenged under section 516(b) of the Tariff Act of 1930, as amended); Bradford Co. v. American Lithographic Co., 12 U.S.Cust.App. 318, 324, 325 (1924) (classification and rate of duty, as determined by country of origin marking, challenged under section 516(b) of the Tariff Act of 1922). In addressing Norcal's petition, Customs would necessarily scrutinize its interpretation of section 1304 as applied to imported frozen produce. Ultimately, exhaustion of the petition process would lead to the availability of review in the Court of International Trade under subsection 1581(b), see 28 U.S.C. § 2637(b) (1988); National Corn Growers, 840 F.2d at 1556, n. *, after exhaustion of section 1516's administrative remedies.
 
 
 22
 Norcal argues that section 1516 is simply inadequate because
 
 
 23
 the process takes too long, given the economic background, for the meaningless gesture of taking product by product and asking Customs to change views so recently expressed in the ruling.... Norcal processors could care less about the "appraised value, classification or rate of duty" of imported frozen produce. Those issues are not going to save the California processing industry.
 
 
 24
 But Congress has provided a specific, detailed framework for domestic parties to challenge Customs' actions. With their built-in safeguards and limitations, these procedures are the proper remedies wherever available and are not to be dismissed because they are inconvenient. See National Corn Growers, 840 F.2d at 1556. Accordingly, Norcal having failed to exhaust its administrative remedies under section 1516, jurisdiction in the Court of International Trade is lacking. That being the case, of course, its decision on the merits is void.
 
 Conclusion
 
 25
 Accordingly, the judgment of the Court of International Trade is reversed, and the case is remanded with instructions that the court dismiss the complaint for lack of jurisdiction.
 
 COSTS
 
 26
 Norcal shall bear the costs of this appeal.
 
 
 27
 REVERSED AND REMANDED.
 
 
 
 [1]
 19 U.S.C. § 1304 (1988) provides:
 Marking of imported articles and containers
 (a) Marking of articles
 Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article.
 
 
 [2]
 19 C.F.R. § 134.41 (1991) provides:
 Methods and manner of marking.
 (b) Degree of permanence and visibility. The degree of permanence should be at least sufficient to insure that in any reasonably foreseeable circumstance, the marking shall remain on the article (or its container) until it reaches the ultimate purchaser unless it is deliberately removed. The marking must survive normal distribution and store handling. The ultimate purchaser in the United States must be able to find the marking easily and read it without strain.