**AMERICAN FROZEN FOOD INSTITUTE, INC.; Green Giant Foods, a Division of the Pillsbury Company; J.R. Simplot Company; National Food Processors Association, Plaintiffs,**

v.

**The UNITED STATES; Lloyd Bentsen, Secretary of the Treasury; John P. Simpson, Deputy Assistant Secretary of the Treasury; and George J. Weise, Commissioner of Customs, Defendants.**

Court No. 94–02–00101.
Slip Op. 94–97.

United States Court of
International Trade.

June 9, 1994.

---

Neville, Peterson & Williams, John M. Peterson, George W. Thompson, Peter J. Allen and Margaret R. Polito, New York City, and Pillsbury Madison & Sutro, Reginald D. Steer, Lynn L. Miller and Richard J. Nelson, San Francisco, CA, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Velta A. Melnbrencis, Asst. Director, Commercial Litigation Branch, Civ.Div., U.S. Dept. of Justice, John K. Lapiana, Washington, DC (Matthew McConkey, Atty., Office of Chief Counsel, U.S. Customs Service, of counsel), for defendants.

Titchell, Maltzman, Mark, Bass, Ohleyer and Mishel, Richard D. Maltzman, San Francisco, CA, for amicus curiae, Norcal Crosetti Foods, Inc.

## OPINION

RESTANI, Judge:

This matter is before the court on a motion to dismiss, or in the alternative, for summary judgment, brought by defendants, the United

States, Lloyd Bentsen, Secretary of the Treasury ("the Secretary"), John P. Simpson, Deputy Assistant Secretary of the Treasury, and George H. Weise, Commissioner of Customs. In support of their motion, defendants argue that this court lacks jurisdiction to hear plaintiffs' challenge to Treasury Decision 94–5 ("T.D. 94–5"), 58 Fed.Reg. 68,743 (Dep't Treas.1993), which requires that the country of origin marking on packages containing imported frozen produce must appear on the front panel in accordance with certain type and size specifications. Defendants further assert for purposes of summary judgment that Customs was not arbitrary and capricious in its promulgation of this decision. In response, plaintiffs in essence request a judgment from this court finding T.D. 94–5 null and void in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553 and 706(2) (1988), and § 304(a)(1) of the Tariff Act of 1930.[1]

## I.

### *Background*

Plaintiffs American Frozen Food Institute, Inc. and National Food Processors Association are trade associations, a majority of whose members are engaged in the manufacture, packaging and marketing of frozen food products, including frozen produce. Plaintiff Green Giant Foods ("Green Giant") is a U.S. manufacturer and marketer of products containing frozen produce, and is an importer of frozen produce for use in frozen food products. Plaintiff J.R. Simplot Company also imports frozen produce.

On May 9, 1988, certain U.S.-based frozen food packaging companies, including Norcal Crosetti Foods, Inc. ("Norcal"), filed requests and exemplars of packaging with Customs for a determination regarding whether specific frozen produce packages were properly marked to show country of origin, as required by 19 U.S.C. § 1304(a) (1988).[2] The domestic frozen food packagers sought a ruling that the country of origin could only be marked on the front panel of the product packaging to satisfy the meaning of the term "conspicuous" as used in § 1304, and implemented in the Customs Regulations, 19 C.F.R. part 134.[3] Customs considered the requests to be "domestic interested party

---

1. The parties were alerted prior to oral argument that the court would consider the response to defendants' motion to dismiss as a cross-motion for summary judgment or judgment on the record.

  Although plaintiffs' motion for preliminary injunction dated February 23, 1994 is still before the court, the remedy sought, preventing defendants from implementing or enforcing the requirements of T.D. 94–5 pending this court's review of the decision, was achieved by other means. As defendants suspended enforcement of T.D. 94–5 until January 1, 1995, and the court has ruled on the merits, this motion has become moot. *See* 59 Fed.Reg. 14,548 (Dep't Treas. 1994) (suspending date of compliance for T.D. 94–5).

2. Section 1304 of title 19 of the United States Code requires as follows:

  Except as hereinafter provided, every article of foreign origin (or its container ... ) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

  (1) ... prescribe any reasonable method of marking, ... and a conspicuous place on the

article (or container) where the marking shall appear....
19 U.S.C. § 1304(a)(1).

3. The regulations relating to marking country of origin on packaging provide:

  § 134.46 Marking when name of country or locality other than country of origin appears.

  In any case in which the words "United States," or "American," the letters "U.S.A.," any variation of such words or letters, or the name of any city or locality in the United States, or the name of any foreign country or locality other than the country or locality in which the article was manufactured or produced, appear on an imported article or its container, there shall appear, legibly and permanently, in close proximity to such words, ... and in at least a comparable size, the name of the country of origin preceded by "Made in," "Product of," or other words of similar meaning.

  § 134.47 Souvenirs and articles marked with trademarks or trade names.

  When as part of a trademark or trade name ..., the name of a location in the United States or "United States" or "America" appear, the article shall be legibly, conspicuously, and permanently marked to indicate the name of the country of origin of the article preceded by "Made in," "Product of," or other similar

petitions" pursuant to 19 U.S.C. § 1516 (1988), and determined that the country of origin markings on the back panels of the samples submitted were "conspicuous", thus front panel marking was not required. *See* Customs Headquarters Ruling ("HRL") 731830 (Nov. 21, 1988).[4]

Norcal and other parties subsequently brought an action alleging Customs had misinterpreted the "conspicuous" requirement in § 1304. *See Norcal/Crosetti Foods, Inc. v. United States Customs Service*, 15 CIT 60, 758 F.Supp. 729 (1991) (*"Norcal I"*), *vacated*, 790 F.Supp. 302 (Ct. Int'l Trade 1992). The *Norcal I* plaintiffs prevailed on the merits of their summary judgment motion, as the court found that the country of origin must be marked on the front or most prominent panel of the package to be "conspicuous." *Id.* at 74, 758 F.Supp. at 741. On May 28, 1991, at the direction of the *Norcal I* court, Customs revoked HRL 731830 and ruled that frozen produce was not marked in a conspicuous place unless the marking appeared on the front panel of the package. T.D. 91–48, 56 Fed.Reg. 24,115, 24,115 (Dep't Treas.1991). Customs adopted the findings and determinations made by the *Norcal I* court, "subject to such modifications as may be directed by the appellate court, concerning the proper location of and the type size and style to be employed in marking the country of origin." *Id.* Customs also solicited comments on the implementation date for front panel marking.[5] *Id.* at 24,115–16.

On appeal, the Federal Circuit determined that the *Norcal I* court lacked jurisdiction to decide the matter, as plaintiffs there had failed to exhaust the administrative remedies available under 19 U.S.C. § 1516 (1988). *See Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359–60 (Fed.Cir.1992) (*"Norcal II"*). The Federal Circuit remanded with instructions to dismiss the case and vacate *Norcal I*. *Id.* at 360.

On January 13, 1993, Norcal and Patterson Frozen Foods, Inc. filed a petition pursuant to 19 U.S.C. § 1516 ("the 516 petition"), requesting that Customs reconsider and reject the findings in HRL 731830 and begin enforcement of the requirements set out in T.D. 91–48. Enclosed with a supplemental submission to the petition were specific exemplars of labelling for which Norcal requested review. Decl. of Richard Maltzman Supp. Br. of *Amicus Curiae* Norcal, Ex. D. Customs published notice of the 516 petition and solicited comments on September 9, 1993. 58 Fed.Reg. 47,413 (Dep't Treas.1993).[6]

Customs determined on December 29, 1993 that back panel marking was insufficient and front panel marking of country of origin was required, in a size and style to match the net weight or quantity marking of the product. T.D. 94–5, 58 Fed.Reg. at 68,-746. Customs indicated the effective date for this decision would be May 8, 1994, to allow importers time to modify their packaging. *Id.* Customs further noted that "[c]onspicuous marking within the meaning of T.D. 91–48 shall be limited to marking which complies" with the additional specifications for type size and style set forth.[7] *Id.* at 68,747.

words, in close proximity or in some other conspicuous location.
19 C.F.R. §§ 134.46, 134.47 (1993).

**4.** The industry practice is to mark the country of origin on the back panel, usually near the nutritional information and the expiration date of the food products. T.D. 91–48, 56 Fed.Reg. 24,115, 24,115 (Dep't Treas.1991).

**5.** T.D. 91–48 did not contain an effective date or other language to implement the front panel requirement.

**6.** The notice made clear that Customs has never enforced T.D. 91–48 and regarded the findings of HRL 731830 reinstated, once *Norcal II* was decided and *Norcal I* was vacated. *See* 58 Fed.Reg. at 47,414.

**7.** T.D. 94–5 states in part,
    To further insure the conspicuousness and legibility of the indication of country of origin, and in recognition of the expertise of the Food and Drug Administration with respect to food labeling, we are modeling Customs requirements on certain of the [FDA regulatory] specifications ... which apply to the required declaration of net quantity of contents as the specification for the indication of origin.... The following specifications ... are needed for the enforcement of uniform standards of conspicuousness and legibility....
    1. The indication of origin shall appear as a distinct item on the principal display panel ...
    2. The indication shall appear in ... boldface upper case Roman or san serif print or type which shall be in distinct contrast ... to its background.

Plaintiffs filed the instant action challenging T.D. 94–5 on February 14, 1994. Plaintiffs moved for a preliminary injunction on February 24, 1994. On March 29, 1994, Customs indicated that the compliance date for the front panel marking requirement in T.D. 94–5 would be suspended until January 1, 1995. 59 Fed.Reg. 14,548 (Dep't Treas.1994). Customs also suspended the compliance date for meeting the type size and style requirements for front panel marking, and solicited comments both on a new effective date and the specifications for type size and style. 59 Fed.Reg. 14,579 (Dep't Treas.1994). Defendants moved to dismiss this action on March 24, 1994.

## II.

### Discussion

A. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

The threshold issue presented is whether this court possesses jurisdiction to hear plaintiffs' challenge to T.D. 94–5. Defendants contend that plaintiffs improperly seek a review of the 516 petition by Norcal, for which judicial review is only available to the

> . . . .
> 4. The indication shall be in letters and numerals in a type size established in relationship to the area of the principal display panel of the package and shall be uniform for all packages of substantially the same size by complying with the following type specifications:
> . . . .
> (c) Not less than three-sixteenths inch in height on packages the principal display panel of which has an area of more than 25 but not more than 100 square inches.
> (d) Not less than one-fourth inch in height on packages the principal display panel of which has an area of more than 100 square inches, except not less than 1/2 inch in height if the area is more than 400 square inches.
> 58 Fed.Reg. at 68,746–47.

**8.** Only after importation may importers challenge a Treasury determination rendered in response to a 516 petition, pursuant to 28 U.S.C. § 1581(a), thus jurisdiction under this section is currently unavailable to plaintiffs.

**9.** In their motion for preliminary injunction and in opposition to defendants' motion to dismiss, plaintiffs argued only that jurisdiction was available under § 1581(i)(4), rather than under § 1581(h), to enable them to seek injunctive relief. *See* 28 U.S.C. § 2643(c)(4) (1988) (limiting

"domestic interested party" petitioner, not to importers. *See* 19 U.S.C. § 1516(c), (e) (1988).[8] Defendants also maintain that plaintiffs are unable to satisfy the test for jurisdiction under 28 U.S.C. § 1581(h) (1988). Plaintiffs respond that T.D. 94–5 contains new marking requirements constituting rulemaking subject to review under the APA. As such, plaintiffs assert jurisdiction under § 1581(h).[9]

Under certain circumstances, a plaintiff is not required to complete the traditional protest procedures as defined in 19 U.S.C. §§ 1514 and 1515 (1988) before bringing a civil action.[10] One alternative available to an importer seeking pre-importation review is found in § 1581(h), which provides in part that

> The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, . . . relating to . . . marking . . . , but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an oppor-

remedy under § 1581(h) to declaratory relief). At oral argument, plaintiffs abandoned their § 1581(i) argument and contended that § 1581(h) was the proper basis for jurisdiction.

The court notes that § 1581(i) is the residual jurisdiction provision, and may only be invoked when another subsection of § 1581 is unavailable or the remedy provided by another subsection is "manifestly inadequate." *See National Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1557 (Fed.Cir.1988); *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

**10.** An importer has a broader range of remedies available to challenge a Treasury decision than does a domestic party. *See* 19 U.S.C. §§ 1514–1515 (procedures for importer protest of Customs decisions); 28 U.S.C. §§ 1581(h) (providing for pre-importation review), 1581(i) (residual jurisdiction provision), 2637(a) (allowing filing of civil action after liquidated duties paid), and 2637(c) (1988) (allowing § 1581(h) jurisdiction where administrative remedies not yet exhausted). A domestic "interested party" may protest a Customs decision only through the 516 petition process. *See* 19 U.S.C. § 1516 (procedures for interested party petition); 28 U.S.C. § 2637(b) (requiring exhaustion of administrative remedies under § 1516 before suit filed).

tunity to obtain judicial review prior to such importation.

28 U.S.C. § 1581(h).

■ The court has interpreted this section to set out four requirements to establish jurisdiction: 1) review must be sought prior to importation; 2) review sought must be for a ruling; 3) the ruling must relate to certain subject matter; and 4) the importer must show that irreparable harm will result unless judicial review prior to importation is obtained. *National Juice Prods. Ass'n v. United States,* 10 CIT 48, 51, 628 F.Supp. 978, 982 (1986). Plaintiffs have the burden of establishing that jurisdiction exists. *Id.*

The parties do not dispute that judicial review sought is for goods prior to importation and that T.D. 94–5 pertains to a specific or certain subject matter, but disagree as to the remaining two factors to establish § 1581(h) jurisdiction.

### 1. *The ruling requirement*

Defendants initially argue that T.D. 94–5 is not a ruling as contemplated under § 1581(h), but rather a general interpretation regarding proper placement of country of origin markings, arising from the decision on the 516 petition.

A "ruling" has been defined in the legislative history of § 1581(h) as a "determination by the Secretary of the Treasury as to the manner in which it will treat [a] completed transaction." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 46, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3758. An "internal advice" ruling, or a "general interpretive ruling" will not invoke § 1581(h) jurisdiction. *See Pagoda Trading Co. v. United States,* 6 CIT 296, 298, 577 F.Supp. 22, 24 (1983); *American Air Parcel Forwarding Co. v. United States,* 5 CIT 8, 11–12, 557 F.Supp. 605, 608, *aff'd,* 718 F.2d 1546 (Fed.Cir.1983),

*cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984).

In *Pagoda Trading,* the "ruling" at issue was a Treasury Decision stating guidelines for classification of footwear but not ruling specifically on the merchandise intended to be imported. 6 CIT at 297, 577 F.Supp. at 23. The court found this ruling to be a general interpretive ruling and thus precluded from § 1581(h) review. *Id.* at 298, 577 F.Supp. at 24. Importers in *American Air* challenged Customs' response to a request for an internal advice ruling. 5 CIT at 11, 557 F.Supp. at 608. The court there determined that the legislative history of § 1581(h) expressly excluded internal advice rulings as a basis for jurisdiction under that section. *Id.* at 12, 557 F.Supp. at 608. Further, internal advice rulings are available only for goods already imported and are not prospective. *Id.* Because T.D. 94–5 clearly functions as a determination of the manner in which frozen produce imports will be treated, the ruling does not resemble either of the exceptions described in *Pagoda Trading* or *American Air.* For these reasons, T.D. 94–5 is a ruling that is sufficiently specific to be reviewed under § 1581(h).[11]

### 2. *Irreparable harm*

Defendants' additional challenge to § 1581(h) jurisdiction is that plaintiffs have failed to establish irreparable harm, and that any risk of harm has been eliminated by the suspension of the implementation date of T.D. 94–5 until January 1, 1995, as it pertains to front panel marking.

Plaintiffs have presented evidence that they will lose substantial sums of money from the destruction of stockpiled non-complying labelling. *See* Pls.' Resp. to Defs.' Mot. Dismiss, App. A, Anderson Aff., ¶ 3; *id.,* App. B, Drabkin Aff., ¶ 2. Plaintiffs also indicated that costs for labelling redesign were projected at over $9 million. *See id.,* App. A,

---

11. For the same reasons as discussed in the text, defendants' contention that the controversy is not ripe must also fail. Where there is no doubt that the ruling involved will apply to articles that plaintiff is going to import, the legal dispute is sufficiently concrete. *Association of Food Indus., Inc. v. Von Raab,* 9 CIT 626, 627, 624 F.Supp. 1557, 1558 (1985).

Plaintiffs correctly argue that the controversy is ripe because T.D. 94–5 presents a new regulatory scheme for marking placement that also specifies type size and style, with a specific effective date for at least part of the new scheme.

Anderson Aff., ¶ 4. Plaintiff Green Giant stated that its costs to destroy labels and its printing costs to change labels would be in excess of $900,000. *See* Pls.' Mem. Supp. Prelim. Inj., Ex. E, Cronk Aff., ¶ 18. These estimated costs also reflect that in many instances where imported vegetables from more than one foreign country are used, plaintiffs would be required to design and order multiple packages for one product, to provide each possible combination of countries of origin for the vegetables contained. *Id.,* ¶ 13. Additionally, plaintiff Green Giant stated that it would be necessary to re-engineer its inventory management process to track the source of the vegetables from delivery to packaging to ensure that the various labels will correctly reflect the countries of origin for the vegetables. *Id.,* ¶ 16.

Irreparable harm is that harm that cannot be reasonably redressed in a court of law. *National Juice,* 10 CIT at 53, 628 F.Supp. at 984. Essential to the inquiry into irreparable harm is the immediacy of the injury and the inadequacy of future corrective relief. *Id.* Plaintiffs in *National Juice* presented evidence of costs to be incurred for discarding and redesigning labels, costs not recoverable if plaintiffs were to prevail on the merits. *Id.* at 54, 628 F.Supp. at 985. In *National Juice,* the court found plaintiffs' showing met the standard of clear and convincing evidence that irreparable harm would result if pre-importation review of a country of origin marking ruling was not permitted. *Id.* at 57, 628 F.Supp. at 986–87. Plaintiffs here have submitted sufficient evidence to demonstrate the significant cost involved to comply with T.D. 94–5, even as it is currently amended.

Further, the temporary suspension of the front panel marking requirement in T.D. 94–5 does not eliminate the risk of irreparable harm. Plaintiffs now face a two-step compliance process, as they are required to redesign labelling to include front panel marking by January 1, 1995. They may also be re-quired to redesign the labelling a second time, if Customs changes its mind as to type size and style requirements after the notice and comment period. Although the defendants respond that the notice and comment period on type size and style is still being conducted and does not present a risk of immediate irreparable harm, any date for implementation of this requirement may continually be adjusted, always presenting a two-step redesign process for plaintiffs. Plaintiffs clearly need a court decision in advance of importation to avoid irreparable harm in this instance.

Defendants also argue that compliance with changing trade regulations is the cost of doing business, and rely on the holding in *Association of Food Indus., Inc. v. Von Raab,* 9 CIT 626, 628, 624 F.Supp. 1557, 1559 (1985), wherein the court did not find costs 'for new labels to constitute the requisite harm. The determination in *Von Raab* is distinguishable, as the plaintiffs there failed to establish that use of adhesive labels to add country of origin was an unacceptable interim measure to deplete the stockpiled label inventories. *Id.*[12]

Plaintiffs here have made a sufficient showing of irreparable harm to satisfy the standard set in *National Juice.* The court finds that plaintiffs have satisfied the requirements for § 1581(h) review, and thus jurisdiction to review T.D. 94–5 is not lacking. Defendants' motion to dismiss is denied.

### B. *Standard of Review*

The standard of review for any rulemaking that does not follow a hearing on the record is whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A) (1988). An administrative agency must act in accordance with the unambiguously expressed intent of Congress. *Chevron U.S.A. Inc. v. Natural Re-*

---

**12.** Although the parties here did not raise specifically the issue of whether corrective adhesive labels are a feasible interim measure to reduce cost of compliance, in *National Juice* the court found adhesive labelling of frozen products not to be a viable alternative, because the stickers do not adhere to wet surfaces and there is no guarantee of accurate placement. 10 CIT at 55, 628 F.Supp. at 985. Thus, defendants' argument fails to establish that plaintiffs have not succeeded in meeting the irreparable harm prong of the jurisdictional test.

*sources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). If the relevant statute is silent or ambiguous regarding the specific issue, the question before the court is whether the agency's answer is a permissible construction of the statute. *Id.* at 843, 104 S.Ct. at 2782. The scope of review is limited to the administrative record. *See* 28 U.S.C. § 2640(e) (West Supp.1994); 5 U.S.C. § 706. To the extent the court must review plaintiffs' allegations regarding whether T.D. 94–5 was the product of improper political influence, the court may consider evidence outside the record.[13] *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).

To grant a motion for summary judgment, the court must decide there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. USCIT Rule 56(d).

## C. *Merits of the Summary Judgment Motions*

Defendants seek, in the alternative to their motion to dismiss, a grant of summary judgment in their favor ruling that T.D. 94–5 is not arbitrary and capricious. Defendants contend that T.D. 94–5 is not subject to the requirements of the APA, as it is an interpretive rule construing the meaning of marking requirements set out in 19 U.S.C. § 1304. Plaintiffs respond that T.D. 94–5 is arbitrary and capricious because defendants did not avail themselves of APA procedures in promulgating T.D. 94–5 as a legislative rule. Plaintiffs also contend that there is evidence that T.D. 94–5 was the product of a political agreement. Plaintiffs further argue that Treasury violated a statutory mandate to issue any special marking requirements by regulation.

### 1. *Nature of ruling as legislative or interpretive*

According to the APA, an agency is required to notify the public and provide an opportunity for comment, prior to issuance of a regulation or rule of general applicability. 5 U.S.C. § 553. Section 553(b) provides that:

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

*Id.* § 553(b). The requirements of § 553(b) apply to proceedings for the issuance of substantive rules with the force of law. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979); *Batterton v. Marshall,* 648 F.2d 694, 700–02 (D.C.Cir.1980). The term "rulemaking" embraces agency processes for formulating, amending or repealing such substantive rules. 5 U.S.C. § 551(5) (1988). Any attempt by an agency to engage in rulemaking without opportunity for public comment is condemned. *See National Wildlife Fed'n v. Clark,* 577 F.Supp. 825, 828 (D.D.C.1984).

Plaintiffs assert that T.D. 94–5 is a legislative rule, largely because T.D. 94–5 reads into the term "conspicuous" in § 1304 additional requirements regarding type size and style that are not contemplated by the statute and that will be applicable to any import-

**13.** Parties agreed that the court could resolve the factual issues regarding this point on the basis of affidavits and deposition testimony.

er of frozen produce. Plaintiffs emphasize that neither did they receive notice of the type size and style requirements specified, nor were they afforded an opportunity to comment before the issuance of the ruling.

■ Courts have relied on certain general principles to guide the determination of whether a rule is interpretive or legislative. Interpretive rules state merely what an administrative agency thinks the statute means, and only remind affected parties of existing duties. *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985). An interpretive rule need not be merely a paraphrase of the statute: it may provide "crisper and more detailed lines than the authority being interpreted," without exceeding the bounds of the notice and comment exemption under § 553. *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C.Cir.1993).

On the other hand, substantive or legislative-type rules are those which relate to and change the standards of conduct, and have force of law. *See, e.g., American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C.Cir.1987) (finding substantive rules effect change in existing law and policy); *Cabais v. Egger*, 690 F.2d 234, 238 n. 9 (D.C.Cir.1982) (stating that legislative rules have effects completely independent of the statute). A legislative rule is one that is intended to create new rights and duties. *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1307–08 (D.C.Cir.1991) (quoting *General Motors*, 742 F.2d at 1565). The court must focus on the intended legal effect of the rule adopted, not the stated intent of the agency, to determine whether a rule is legislative or interpretive. *See General Motors*, 742 F.2d at 1565.

For the sake of argument, the court accepts defendants' position that to the extent the front panel marking portion of T.D. 94–5 is separable from the other portions of the ruling, it is an interpretive ruling. In *Norcal I*, 15 CIT at 71–72, 758 F.Supp. at 739, placement of country of origin information clearly was considered to be interpretive. The *Norcal II* court also may have accepted that the term "conspicuous" could be limited to one meaning for frozen food packaging.

*See Norcal II*, 963 F.2d at 359. The Federal Circuit in *Norcal II* stated that the domestic industry's attempt to require front panel marking was within the purview of § 516 of the Tariff Act of 1930. *Id.* A Treasury Decision under 516 can do no more than interpret the law; it cannot create a new legislative rule. It is possible, however, that the appellate court only meant that if relief was warranted, it could only result from a 516 petition.

In any case, the court finds that the type size and style portion of T.D. 94–5 functions as a legislative ruling. The type size and style requirements are not interpretive. There exists a broad range of type sizes and type styles that may be conspicuous. From those, Customs has selected a narrow range of sizes and styles. The text of T.D. 94–5 supports this view:

> Customs is electing ... to adopt ... a blanket requirement that marking appear on the front of the frozen produce package in the lettering and placement specified....
>
> ....
>
> ... The effect of such a determination ... is to remove any option ... to select from marking locations and methods which satisfy [§ 1304].

58 Fed.Reg. at 68,745–46. These selections do not interpret the meaning of "conspicuous," or any other term in the statute, but rather impose additional requirements for marking. *See B.F. Goodrich Co. v. United States*, 794 F.Supp. 1148, 1154 (Ct.Int'l Trade 1992) (regulation establishing substantive new requirement not extant in duty drawback statute required notice and comment).

■ The court concludes that because Customs has chosen to promulgate front panel marking in combination with other requirements clearly needing APA rulemaking procedures, the entirety of T.D. 94–5 may not stand. It would be neither reasonable for the court to bifurcate T.D. 94–5 when Customs did not do so originally, nor equitable to proceed on two separate tracks for

those parties who must comply and manufacture new labelling.[14]

### 2. Compliance with 19 U.S.C. § 1304(a)(1)

Section 1304 provides that all foreign products imported into the United States, or their containers, must be marked with country of origin information in a conspicuous place as legibly, indelibly and permanently as possible. 19 U.S.C. § 1304. Further, this section provides in part that, "[t]he Secretary of the Treasury may by regulations ... prescribe any reasonable method of marking." *Id.* § 1304(a)(1). The legislative history of § 1304(a)(1) indicates that "may" is to be construed as "shall," for purposes of the statute. *Customs Admin. Bill: Hearings Before the House Comm. on Ways and Means on H.R. 6738,* 75th Cong., 1st Sess. 46, 49 (1937). Defendants do not dispute this construction.

In § 134.41(a) of the Customs Regulations, "[d]efinite methods of marking are prescribed only for articles provided for in § 134.43 and for articles which are the objects of special rulings by the Commissioner of Customs." 19 C.F.R. § 134.41(a) (1993). Section 134.43 details particular marking requirements for certain types of goods, and in each instance, these requirements were promulgated pursuant to § 1304 and the APA. In *United States v. Mersky,* 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423 (1960), the Supreme Court acknowledged the mandatory rulemaking requirement in § 1304, but found no violation for criminal law purposes of the specific language of the regulation. *Id.* at 437–38, 440, 80 S.Ct. at 463, 464–65.

It is clear that T.D. 94–5 does not conform with § 1304 regarding marking methods, as it prescribes requirements for marking by designating specific type sizes and styles, but it was not promulgated as a regulation. *See* discussion *infra* part 4. The court concludes that because T.D. 94–5 was issued in contravention of § 1304, the decision is unlawful as "without observance of procedure required by law," as proscribed by the APA, 5 U.S.C. § 706(2)(D).

### 3. Political agreements

In addition, plaintiffs argue that the requirements in T.D. 94–5 were the result of a political agreement between Deputy Assistant Secretary Simpson and certain Congressmen. Specifically, plaintiffs maintain that T.D. 94–5 was formulated in response to the request of one Congressman's constituents, in exchange for the Congressman's vote to implement the North American Free Trade Agreement ("NAFTA").

Evidence in the record indicates that the type size chosen and specified in T.D. 94–5 is larger than any other type size requirement previously imposed on packages of similar size. *See* Delgado Dep. Ex. 11–A. Mr. Simpson stated at his deposition that he decided on the type size, in conjunction with conversations in the fall of 1993 with Ms. Linda Delgado, a Congressional staff member, on the basis of health warnings on alcoholic beverage bottle labels. Simpson Dep. at 137–38. Evidence does indicate that Mr. Simpson, in contrast to others in the Treasury Department, had been a proponent of front panel marking since 1991, long before his conversations with Ms. Delgado and concurrent with his work to implement Customs regulations related to NAFTA over the past three years. *Id.* at 59, 276. It appears however that at some point he and others in the Treasury Department, at least, became inflexible in their views on all aspects of T.D. 94–5, most likely because of political commitments.[15] *Id.* at 277. Following APA rulemaking procedures also will help ensure that, despite this history, all comments will be taken into consideration before a final rule is adopted.

---

**14.** In fact, it appears sensible to promulgate type size requirements in conjunction with position labelling requirements, in order to make such labelling meaningful to a consumer.

**15.** It is unclear whether, from the point of view of the Congressman, this was a *quid pro quo.* What is important, however, is that after the NAFTA vote, and after discussion with Congressional staff, one or more officials in the Treasury Department with significant responsibility for the 516 decision felt bound to resolve the matter in a manner which would meet with the Congressman's approval.

#### 4. *Failure to give notice and afford opportunity for comment*

█ Finally, contrary to defendants' arguments, T.D. 94–5 was not promulgated in a manner that fulfills the essential notice and comment procedures required under the APA for legislative rules. The sole "notice" of new marking requirements contemplated by defendants was in connection with the 516 petition, and indicated only that the petition had been received and public comment would be accepted regarding petitioners' request that HRL 731830 be rejected and T.D. 91–48 enforced. *See* 58 Fed.Reg. 47,413, 47,414 (Dep't Treas.1993). No indication was given that legislative rulemaking was contemplated.

A notice must indicate clearly what specific regulatory changes are proposed. *Florida Power & Light Co. v. United States,* 846 F.2d 765, 771 (D.C.Cir.1988) (determining purpose of proposed rulemaking is to provide sufficient factual detail and rationale to permit interested parties to contest reasoning); *see also Shell Oil Co. v. EPA,* 950 F.2d 741, 751 (D.C.Cir.1991) (finding ambiguous comments and weak agency communications gave no opportunity to criticize proposed rules).

Further, the only opportunity for comments on T.D. 94–5 itself, prior to suspension of its effective date, was limited to selection of an appropriate effective date for front panel marking. Although T.D. 94–5 describes in part the rationale behind the selection of both front panel marking and type sizes and styles, *see* 58 Fed.Reg. at 68,745–47, this explanation comes too late and deprived plaintiffs and the public of a meaningful opportunity for comment. *See National Cable Television Ass'n v. FCC,* 747 F.2d 1503, 1507 (D.C.Cir.1984). The recent indication of flexibility on type size and style also does not fulfill APA requirements. *See* 59 Fed.Reg. at 14,579 (soliciting comments on effective date, type size and style of marking). As indicated, Customs' creation of a two-step compliance process does not remedy the flaws in T.D. 94–5. Before the importation of goods, plaintiffs and the public must be informed of binding rule requirements on front panel marking and type size and style. Plaintiffs and the public must also be afforded a full opportunity for notice and comment on the proposed rule.

The court determines that the procedures followed by Customs in issuing T.D. 94–5 are insufficient to satisfy the notice and comment requirements of the APA. When a regulation is found not to have been promulgated in compliance with the APA, the regulation cannot be afforded the "force and effect of law." *Chrysler,* 441 U.S. at 313, 99 S.Ct. at 1723. Because the full rulemaking process has not yet been followed, the court declines to rule on whether T.D. 94–5 was acceptable substantively, but at oral argument all parties, including domestic interests, agreed that the type size and style requirements were ill-considered.[16] Such requirements must be sensible in relation to other labelling requirements, and proportionate with important information on the panel on which it is to be found.[17] The court expects Customs will formulate a rational rule based on comments received to date before publishing a proposed rule.

### III.

#### *Conclusion*

Defendants' motion to dismiss the complaint is denied. Defendants' motion for summary judgment is denied. Plaintiffs' motion for preliminary injunction is denied as moot. The court hereby declares that T.D. 94–5 is null and void, in accordance with 5 U.S.C. § 706(2)(A) and (D).

**SO ORDERED.**

---

**16.** At oral argument, plaintiffs presented evidence that the type size required by T.D. 94–5 for country of origin marking was larger than most warning labels on products that pose health risks. *See* Pls.' Ex. 1.

**17.** It seems unlikely that front panel marking itself would not be found acceptable. The decision in *Norcal I,* although vacated on jurisdictional grounds, *required* front panel marking. 15 CIT at 74, 758 F.Supp. at 741.